COURT OF APPEALS OF VIRGINIA


Present:   Judges Frank, Clements and Senior Judge Willis
Argued at Alexandria, Virginia


KAREN M. CIRRITO

                                                        OPINION BY
v.        Record No. 3248-03-4                  JUDGE ROBERT P. FRANK
                                                      NOVEMBER 23, 2004
THOMAS J. CIRRITO


              FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
                        Kathleen H. MacKay, Judge

           Glenn C. Lewis (Stacy M. Davis; The Lewis Law Firm, P.C., on
           briefs), for appellant.

           James Ray Cottrell (Kyle F. Bartol; Gannon & Cottrell, P.C., on
           brief), for appellee.


        Karen Cirrito, wife, appeals from a final decree of divorce from Thomas Cirrito, husband,

contending the trial court erred in:  (1) finding a payment to husband pursuant to a non-competition

clause was separate property; (2) determining wife had the burden to prove husband's significant

personal efforts were the "proximate cause" of a substantial increase in the value of certain assets;

(3) failing to classify certain increases in separate property as marital property, including a failure to

determine whether husband's salary adequately compensated the marital estate; (4) reducing an

earlier award of attorney's fees and costs; (5) finding that jointly titled property was not gifted to

wife; (6) refusing to award child support retroactive to the date the divorce was filed; and (7)

ordering wife to produce reports from her experts and in limiting and excluding certain testimony of

wife's experts.  For the reasons stated, we affirm in part and reverse in part.

ANALYSIS

## I.  NON-COMPETE PAYMENT

Prior to the marriage, the husband owned LDWC, a long distance telephone service.  On April 1, 1996 the husband sold his interest in LDWC to Telco Communications Group.  In exchange for his shares in LDWC, husband received Telco shares and became President of Telco's Consumer Division with an annual salary of $375,000.  As part of the sales agreement, he agreed to a non-compete provision where he would receive one million dollars within one year after his termination of employment with Telco, provided he would not engage in any competing business.  The employment agreement provided in relevant part:

> 6.  Covenants and Confidential Information.
>
> (a)  The Executive acknowledges the Company's reliance on and expectation of the Executive's continued commitment to performance of his duties and responsibilities during the Term.  In light of such reliance and expectation on the part of the Company, during the periods hereafter specified in Section 6(b), the Executive shall not, directly or indirectly, do or suffer either of the following:
>
>> (i)  Own, manage, control or participate in the ownership, management or control of, or be employed or engaged by or otherwise affiliated or associated as a consultant, independent contractor or otherwise with, any other corporation, partnership, proprietorship, firm, association or other business entity directly or indirectly engaged in the business or, or otherwise directly or indirectly engage in the business of, marketing or providing telecommunication services within the United States; . . .
>>
>> (ii)  Disclose, divulge, discuss, copy of otherwise use or suffer to be used in any manner. . . any confidential or proprietary information relating to the company's business . . . .
>
> *    *    *    *    *    *    *
>
> (b)  The applicable periods shall be:  as to clause (i) of Section 6(a) so long as the Executive is an employee of the Company and for a

period of one year after termination of employment; and as to clause (ii) of Section 6(a), during the term and at any time after the Executive is no longer an employee of the Company.

As additional consideration for Executive's non-competition obligation pursuant to Section 6(a)(i) during the one year period after termination of employment for Cause, without Cause, for Permanent Disability, or because of the expiration of the Term, the Company shall make an additional payment of $1,000,000 to Executive within ninety (90) days after such termination.

The parties married April 13, 1996, twelve days after husband executed the agreement. During the marriage, husband upheld his obligation to not compete and in 1997 Telco paid husband one million dollars. The wife argued below that this payment is marital property and that husband "effectively waived his right to work and receive compensation in his field of expertise" during the term of this non-compete agreement. The husband characterized the payment as separate property, claiming that it was an aspect of his sale of stock to Telco. The trial court agreed with the husband, stating that the money was "in the bank before he was married."

Wife contends on appeal that the payment is marital property because "the $1 million in compensation was in exchange for Mr. Cirrito's forbearance from competing with his former employer for one year after his employment ceased." Husband argues that he earned the right to receive payment under the agreement on April 1, 1996, the date he signed the contract.[1] We find that the trial court erred in finding the payment was husband's separate property.

---

[1] Husband argues on brief that the issue is moot. He suggests that even if the payment is marital property, there is no evidence showing what became of the proceeds. Husband fails to cite any supporting principles of law or authority. "Statements unsupported by argument, authority, or citations to the record do not merit appellate consideration." Roberts v. Roberts, 41 Va. App. 513, 527, 586 S.E.2d 290, 297 (2003) (citation omitted). Having presented no citations or authority in his brief in support of this argument, husband has waived this argument on appeal and we need not address it. See Rule 5A:20(e).

Code § 20-107.3(A)(1)(i) defines separate property as "all property, real and personal, acquired by either party before the marriage . . . ." Marital property is defined as all other property acquired by each party during the marriage that is not separate property. Code § 20-107.3(A)(2)(iii).

The non-compete agreement, contingent upon forbearance of employment, is analogous to a severance package. Severance pay contemplates a salary substitute for future lost wages. Much like severance pay, the one million dollars replaced lost earnings during the period of time the husband was not working in competition with Telco.

Luczkovich v. Luczkovich, 26 Va. App. 702, 496 S.E.2d 157 (1998), in which we discussed the classification of severance pay, is instructive. In Luczkovich the husband contended his severance pay was separate property because he negotiated and received the severance pay two years after the parties separated. While agreeing with husband, we established the criteria for determining whether severance pay is marital or separate property. In reviewing decisions from other states, we concluded "[t]hose decisions provide that the touchstone of the classification is whether the severance pay was intended to compensate the employee for efforts made during the marriage or to replace post-separation earnings." Id. at 708-09, 496 S.E.2d at 160. We also opined that "severance pay is 'a mere expectancy,' it has no value until the termination of employment." Id. at 709, 496 S.E.2d at 160.

Similarly, our analysis here is whether the one million dollars for non-competition was to compensate husband for forbearance made prior to the marriage or to compensate him for efforts made during the marriage. When husband executed the non-compete agreement, the million-dollar payment was a "mere expectancy." It would only be earned for events that took place during the marriage. The non-compete clause is intended to curtail husband's ability to earn his livelihood for one year following his termination from employment. This livelihood,

had it been earned, would clearly be marital property. Although the agreement was negotiated prior to the marriage, the right to receive payment was contingent upon the husband not engaging in a particular business in the future. While married, husband fulfilled this obligation and Telco paid him the sum of one million dollars.

Husband claims no effort was required by him to collect his money. He earned it as soon as he signed the contract. We do not agree. Consummation of the contract depended on husband's conduct during the period following his employment with Telco. Any decision to breach or not breach the agreement would have been made during that time and during the course of the marriage. Additionally, had he violated the agreement, any income earned as a result of the prohibited employment would have been earned during the marriage and become marital property.

It is clear that the payment for not competing with Telco is within the definition of marital property since the right to receive the money was acquired during the marriage and is not separate property as defined in Code § 20-107.3. As to this issue, we remand to the trial court to classify this item as marital property and to determine whether this asset is subject to equitable distribution.

## II. BURDEN OF PROOF - PERSONAL EFFORTS

Wife contends the trial court incorrectly determined that Code § 20-107.3 places the burden on her to prove husband's efforts were the proximate cause "of the substantial increase in the value of" his Telco stock. The correct burden of proof, she claims, is on the husband to prove the increase in value of the separate asset was not attributable to marital efforts.

Wife concedes that our decisions in Martin v. Martin, 27 Va. App. 745, 501 S.E.2d 450 (1998) (*en banc*), and Gilman v. Gilman, 32 Va. App. 104, 526 S.E.2d (2000), establish the correct burden of proof under Code § 20-107.3. Wife argues in her brief that because Code

§ 20-107.3(A)(3)(a) allows the owning spouse to claim rights to "passive appreciation" in the value of separate property, the statute therefore places the burden on the owning spouse to prove that the increase in value of the separate property was not attributable to marital efforts.

The trial court relied on Martin in determining the "non-owning spouse must prove that the personal efforts were significant and resulted in substantial appreciation." The trial court also cited Gilman while reasoning:

> So by the time we have the appellate court talking about those particular parts of 20-107.3, we have the discussion of "significant efforts," "substantial appreciation," and "proximate cause." As noted in Defendant's brief in closing, the use of proximate cause unites the law of personal injury with the law of equitable distribution -- in an ingenious way, I believe -- that is logical and certainly helpful to the Court.

We conclude the trial court properly articulated and applied the correct burden of proof.

Code § 20-107.3(A) provides:

> 1.  Separate property is (i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a spouse other than the other party; (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property; and (iv) that part of any property classified as separate pursuant to subdivision A 3. Income received from separate property during the marriage is separate property if not attributable to the personal effort of either party. The increase in value of separate property during the marriage is separate property, unless marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contributions. The personal efforts of either party must be significant and result in substantial appreciation of the separate property if any increase in value attributable thereto is to be considered marital property.

Code § 20-107.3(A)(3)(a) provides:

> The court shall classify property as part marital property and part separate property as follows:

In the case of income received from separate property during the marriage, such income shall be marital property only to the extent it is attributable to the personal efforts of either party. In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

For purposes of this subdivision, the non-owning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

"Personal effort" of a party shall be deemed to be labor, effort, inventiveness, physical or intellectual skill, creativity, or managerial, promotional or marketing activity applied directly to the separate property of either party.

In reading these two statutory provisions together, we established a three-tiered burden of proof. First, the owner must prove the property is separate property as defined in Code § 20-107.3(A)(1). Here, the fact that the Telco stock is separate property is not contested.

Second, under Code § 20-107.3(A)(3)(a), the non-owning spouse, here the wife, has the burden to prove (i) contributions of marital property or personal efforts were made and (ii) the separate property increased in value. "To the extent the non-owning spouse claims that the increase in value was attributable to personal efforts, the non-owning spouse must prove that the personal efforts were 'significant' and resulted in 'substantial appreciation' of the owning spouse's separate property interest. Code § 20-107.3(A)(1), § 20-107.3(A)(3)(a)." Martin, 27 Va. App. at 751, 501 S.E.2d at 453.

Third, "once the non-owning spouse overcomes the presumption of separateness of the increase in value, the burden shifts to the owning spouse to prove that the increase in value or

some portion thereof was not caused by contribution of marital property or significant personal effort. Code § 20-107.3(A)(3)(a)." Id.

Wife's argument ignores the second tier of proof directed at the non-owning spouse and focuses solely on the third tier. The burden shifts to the owning spouse only after the non-owning spouse proves that the substantial increase in value was caused by significant personal efforts. Here, the trial court correctly assigned the original burden of proof to wife, the non-owning spouse.

Wife further complains that the trial court erred by adding "proximate cause" to the burden of proof requirement so that the non-owning spouse must prove the owning spouse's efforts were the "proximate cause" of substantial increase in the value of the business. We reject this argument because of the language in Gilman. "While Pettus undoubtedly employed intellectual skill in selecting properties to be purchased, the evidence was insufficient to prove that Pettus contributed 'significant' personal effort that was the proximate cause of 'substantial appreciation' in the value of these assets." Gilman, 32 Va. App. at 121, 526 S.E.2d at 771.

Thus, we conclude the trial court applied the proper burden of proof.

### III. INCREASE IN VALUE OF SEPARATE PROPERTY

Since we find that the trial court erred in ordering wife to produce her expert's reports and in limiting and excluding certain testimony of her experts which would address whether certain increases in the value of separate property resulted from the personal efforts of the husband, we remand for additional evidence the issues of (A) increase in the value of separate property and (B) whether husband's salary adequately compensated the marital estate.[2]

---

[2] See Section VII of this opinion.

- 8 -

IV.  ATTORNEY'S FEES

The trial court initially awarded attorney's fees and costs to wife in the amount of $105,000.  In doing so, the trial court stated that the contrast between the husband's ability to pay and wife's ability to pay "could not be greater."  The court noted that "[i]n contrast to her financial situation, her husband has millions of dollars."  Husband reminded the court that during discovery the wife repeatedly denied his requests for admission and caused, he argued, the necessity of going to trial and hiring experts.  "They should be held accountable for their evaluation of the strength of their case."  The court responded:

> I think when a judge considers attorney's fees at this point, the considerations are a little different.  I mean, I have to consider the equities.  And I cannot say that [counsel's] arguments was [sic] completely frivolous or that it had no merit or that they shouldn't have been allowed to bring it to trial, or that I shouldn't be allowed to consider fees at this point because they lost so badly.

Husband filed a motion for reconsideration, arguing that in making an award of attorney's fees the court must examine (a) the results of the litigation, (b) the alternatives offered to litigation in the form of settlement offers made by each party, and (c) the actions of a party during litigation which increase its costs.  He contended that ability to pay should govern the amount of the award only after these threshold criteria have been met.

The trial court conducted a hearing and ruled from the bench.  Regarding the award of attorney's fees, the court stated:

> I have read Mr. Cottrell's [counsel for husband] brief on that and I think he's right.  So I'm taking back the attorney's fees, except for the $8,000.00 that's owed as costs to the vendors.

> \* \* \* \* \* \* \*

> [I]t's fundamentally unfair to take someone who has had to litigate the case to the extent that they did, and then win the case to the extent that they did, and then require them also to pay her fees on top of that, that that's fundamentally unfair.

* * * * * * *

> In other words, what I think [counsel] said was, ability to pay is not the only factor in awarding attorney's fees.

* * * * * * *

> [I]f a wife needs and is entitled to maintenance and support, and the husband has the financial ability to meet these needs, then the trial court should award attorney's fees to the wife. That's a really, that's a conclusion that disregards everything the [counsel for husband] has just said . . . if I just took financial ability to pay and her need, then there wouldn't be [counsel's] arguments would be absolutely beside the point.

Wife argues that because the trial court awarded her spousal support, the court was compelled to also award her attorney's fees. Husband responds that the mere fact that a wife is entitled to support and the husband has the ability to pay does not obligate the trial court to award her attorney's fees. We agree with the husband on this point.

The question of whether to award attorney's fees "'is a matter submitted to the sound discretion of the trial court and is reviewable on appeal only for an abuse of discretion.'" Kane v. Szymczak, 41 Va. App. 365, 375, 585 S.E.2d 349, 354 (2003) (quoting Northcutt v. Northcutt, 39 Va. App. 192, 199-200, 571 S.E.2d 912, 916 (2002)); see also Graves v. Graves, 4 Va. App. 326, 333, 357 S.E.2d 554, 558 (1987). "Given the unique equities of each case, our appellate review steers clear of inflexible rules and focuses instead on 'reasonableness under all the circumstances.'" Kane, 41 Va. App. at 375, 585 S.E.2d at 354 (quoting Joynes v. Payne, 36 Va. App. 401, 429, 551 S.E.2d 10, 24 (2001)).

Citing Poliquin v. Poliquin, 12 Va. App. 676, 406 S.E.2d 401 (1991), the wife argues that where a spouse needs and is entitled to maintenance and support, and the other spouse has the financial ability to meets those needs, then the court abuses its discretion in denying an award to the needy spouse. Relying on the Virginia Supreme Court's decision in Thomas v. Thomas, 217 Va. 502, 505, 229 S.E.2d 887, 890 (1976), we noted in Poliquin that "'[w]here . . . the trial court

- 10 -

finds the wife needs and is entitled to maintenance and support and the husband has the financial ability to meet those needs, its failure to award counsel fees to her is, in our opinion, an abuse of . . . discretion.'" Poliquin, 12 Va. App. at 681, 406 S.E.2d at 405 (quoting Thomas, 217 Va. at 505, 229 S.E.2d at 890) (omission in original).

Husband points out that in Artis v. Artis, 4 Va. App. 132, 138, 354 S.E.2d 812, 815 (1987), this Court adopted a broader interpretation of Thomas:

> We do not believe that the court in Thomas intended to adopt a rule that whenever a wife is granted support, the trial court must automatically award attorney's fees. An award of attorney's fees to a party in a divorce suit is a matter for the trial court's sound discretion after considering the circumstances and equities of the entire case. See Rowand v. Rowand, 215 Va. 344, 346-47, 210 S.E.2d 149, 151 (1974). The equities in the Thomas case warranted an award of attorney's fees.

Thus, argues the husband, our opinion in Artis gave the trial court discretion to consider the equities of the entire case and not just the husband's ability to pay. We agree. We read Thomas and Poliquin to say that the relative financial abilities and support issues should be considered as factors in weighing the equities. However, these factors are not exclusively determinative of whether an award should or should not be made.

The record reflects that the wife sent a letter to the husband offering settlement in the amount of approximately $3,500,000. The husband countered with an offer to settle in the amount of $1,000,000. Wife declined, and the case was litigated over a period of seven days. The record also shows that on December 5, 2002 husband served forty Requests for Admission on wife. On December 26, 2002 she admitted one request, and denied or could not "truthfully admit" the remaining thirty-nine requests. Her evasive responses, citing a present lack of information, prompted husband to file a motion to compel. The trial court conducted a hearing

on January 24, 2003 and ordered the wife to comply.[3]  The court then instructed the parties to return to court on February 7, 2003 to assure wife's compliance.

The record contains no evidence that the husband's conduct compounded the cost of litigation requiring him to reimburse her fees.  Cf. Smith v. Smith, 43 Va. App. 279, 290, 597 S.E.2d 250, 256 (2004) ("The award of [attorney's] fees seems to us particularly appropriate given the effort required to litigate the issue of the marital home . . . ."); Northcutt, 39 Va. App. 192, 571 S.E.2d 912 (ordering wife to pay a share of husband's attorneys fees because of her conduct in delaying the case).  Finally, husband's actions did not contribute to wife's costs to secure access to the justice system.  Via v. Via, 14 Va. App. 868, 872, 419 S.E.2d 431, 434 (1992).

After reconsidering the issues,[4] the trial court concluded that the wife's conduct, in part, precluded her from having her fees paid by the husband.[5]  Where the record contains credible evidence in support of the findings made by the court, we may not retry the facts or substitute our view of the facts for those of the trial court.  Ferguson v. Stafford County Dep't of Social Services, 14 Va. App. 333, 336, 417 S.E.2d 1, 4 (1992).  Here, the trial court carefully considered the claims involved in the divorce proceedings, as well as the husband's success at trial, the wife's refusal of a reasonable offer of settlement, and the wife's injudicious handling of discovery.  The court simply ordered that wife pay her own attorney's fees.  However, since the

---

[3] The subject matter of that hearing is discussed in Section VII of this opinion.

[4] Judges can change their minds, and the rules of court give them twenty-one days to do so.  Bennett v. Commonwealth, 33 Va. App. 335, 344, 533 S.E.2d 22, 27 (2000); Rule 1:1.

[5] The wife asserts that the court's comment that wife "thought she had a bona fide claim to millions of dollars in this case" is an explicit finding that she had a right to bring the case to trial.  Husband challenges the importance of this statement in light of the decision of the court to reconsider.  In any event, because we find that the court made this comment prior to reconsideration of the issue, we need not address it.

trial court, in part, denied wife's attorney's fees because husband substantially prevailed below, and we are reversing the trial court on several significant issues, we remand for the trial court to reconsider the issue of an award of attorney's fees for the previous proceeding and to determine whether additional attorney's fees should be awarded.

## V. NON-GIFTED PROPERTY

During the marriage, the husband purchased four properties with his separate funds and titled each property jointly in both husband's and wife's names.[6] He testified that the purpose for joint titling was for protection against creditors. He said he never intended for wife to have any interest in the property upon a divorce. With regard to the Nantucket property, he denied telling wife the property was her Christmas present. Wife claims that joint titling of the real estate for "asset protection" establishes his intent to gift her an interest in that property. Husband claims wife did not meet her burden of proving donative intent and that the real estate remains his separate property.[7]

Code § 20-107.3(A)(3)(f) provides:

> When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

Here, the only issue is whether the retitling of the properties in question were gifts. If so, the properties are marital property.

---

[6] The trial court ruled specifically that the Florida condominium is separate, non-gifted property. Although the husband omits this property in his statement of facts, we consider the Florida condominium as part of the jointly titled property in this discussion.

[7] Wife also argues public policy disfavors permitting a party to title property jointly to avoid creditors and later claim the spouse has no right to that property. Wife cites no authority for that proposition nor does she develop that argument. Statements unsupported by argument, authority, or citations to the record do not permit appellate consideration. <u>Buchanan v. Buchanan</u>, 14 Va. App. 53, 56, 415 S.E.2d 237, 329 (1992).

A gift is not presumed when existing property is retitled into joint ownership. Code § 20-107.3(A)(3)(g). The burden of proof that the transfer was a gift is upon the party seeking to establish the gift by clear and convincing evidence.[8] Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508 (2003). In order to prove an interspousal gift, the wife must prove the husband's donative intent and the nature and extent of that intent. Lightburn v. Lightburn, 22 Va. App. 612, 617, 472 S.E.2d 281, 283 (1996); Theismann v. Theismann, 22 Va. App. 557, 565-66, 471 S.E.2d 809, 813, aff'd, 23 Va. App. 697, 479 S.E.2d 534 (1996) (*en banc*).

On appeal, we view the evidence in the light most favorable to the prevailing party. Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003). So viewed, the evidence establishes that the husband titled the properties in joint names to protect his personal assets. He testified that he felt it was wise to title the homes in both names to guard against creditor seizure. Although the wife claimed that the properties were gifts to her, the trial court was free to disregard her testimony, which it did. The trial judge heard the testimony of the witnesses and observed their demeanor. At the conclusion of the evidence the court found that wife's testimony was not credible and husband's was. "'In determining whether credible evidence exists, the appellate court does not retry the facts, reweigh the preponderance of the evidence, or make its own determination of the credibility of witnesses.'" Moreno v. Moreno, 24

---

[8] The term "clear and convincing evidence" has been defined as

> [T]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.

Fred C. Walker Agency, Inc. v. Lucas, 215 Va. 535, 540-41, 211 S.E.2d 88, 92 (1975) (quoting Cross v. Ledford, 120 N.E.2d 118, 123 (Ohio 1954)) (emphasis in original).

Va. App. 190, 195, 480 S.E.2d 792, 795 (1997) (quoting Wagner Enters., Inc. v. Brooks, 12 Va. App. 890, 894, 407 S.E.2d 32, 35 (1991)).

Wife cites Dean v. Dean, 8 Va. App. 143, 379 S.E.2d 742 (1989), as authority that jointly titling stock in order to take advantage of tax benefits establishes donative intent. In Dean, the issue was whether husband made an *inter vivos* gift of CSX stock to wife when he conveyed the stock jointly to husband and wife. Husband claimed he merely intended to make wife a "nominal holder" as a convenience and not to transfer ownership.

We upheld the trial court's finding of donative intent, finding "[t]he registration of the security establishes *prima facie* that Frederick Dean intended to make an *inter vivos* gift of the stock to Marilyn Dean at the time he purchased it and registered it in their names." Id. at 146, 379 S.E.2d at 744 (citation omitted).

We concluded:

> We find that the evidence supports the finding of the trial court that Frederick Dean intended Mrs. Dean to be more than a "nominal" holder of the stock. In fact, the record clearly establishes his donative intent and the reasons for his making a gift of the stock to his wife. By making a gift they could share a joint tax benefit by deducting the cost of their annual trips to the shareholders' meetings, and the gift of the stock together with the survivorship rights to Mr. Dean's interest would give the wife "immediate liquidity" at his death. Apparently, Mr. Dean would have us hold that a gift of property made in order to take advantage of a tax benefit is ineffectual. The right of the Deans to legally claim a tax benefit by deducting her expenses exists only if Marilyn Dean owned the stock. Thus, contrary to Frederick Dean's claim the record establishes the donative intent necessary on his part to have made an *inter vivos* gift of the stock to Marilyn Dean.

Id. at 146-47, 379 S.E.2d at 744.

We believe Dean is distinguishable. First, we upheld the trial court's factual determination of donative intent. A person who claims ownership of property by gift must prove the donative intent of the donor. Id. at 146, 379 S.E.2d at 744. Intent is a question to be

determined by the fact finder.  See generally Fleming v. Commonwealth, 13 Va. App. 349, 353, 412 S.E.2d 180, 183 (1991).  Dean was a standard of review case.

Second, Dean is premised on a presumption that no longer exists, i.e., that "registration of the security establishes *prima facie* that [husband] intended" a gift to wife.  Dean, 8 Va. App. at 146, 379 S.E.2d at 744.  Code § 20-107.3(A)(3)(g), enacted by the General Assembly in 1991, specifically rejects such a presumption when existing property is retitled into joint ownership.  Wife acknowledges in her brief that Dean was decided "before the advent of tracing and the dual classification approach under the current statute."

Appellant also cites Utsch, 266 Va. 124, 581 S.E.2d 507, to support her contention that the transfer was a gift.  However, Utsch is distinguishable on its facts.  Husband, by deed of gift, in consideration of "love and affection" conveyed the marital residence from his sole name to husband and wife, as tenants by the entireties.  Id. at 126, 581 S.E.2d at 508.  The issue in Utsch was whether this Court erred in ruling that while the deed of gift was unambiguous concerning the intent to retitle the property, "[i]t does not necessarily follow, however, that [h]usband intended to convey the property into the marital estate and thus relinquish his separate interest in the property for the purposes of equitable distribution."  Id. at 128, 581 S.E.2d at 509.  Not relying on the "four corners" of the deed of gift, this Court considered other evidence to determine donative intent.  In this context, the Supreme Court of Virginia held:

> Nowhere in Code § 20-107.3(A)(3)(f) is there a requirement of proof that a gift was intended for a particular purpose.  The proof required under the statutory provision is simply that the transfer was a gift.  As we have previously held in a case involving a grantor's intent in a deed, "[i]f [the party] intended the deed to be operative for one purpose, he must be taken to have intended it to be operative for all purposes apparent on its face."  Capozzella v. Capozzella, 213 Va. 820, 824, 196 S.E.2d 67, 70 (1973).

Id. at 128-29, 581 S.E.2d at 509.  The Supreme Court found that the deed of gift was unambiguous on its face and that the parol evidence rule barred any other evidence of the

- 16 -

grantor's intent. "The deed not only shows by clear and convincing evidence the intent to jointly title the marital residence, but it also shows the donative intent of Husband in making the transfer." Id. at 129, 581 S.E.2d at 509.

Appellant concludes from Utsch that since husband conveyed the properties jointly, even for the purpose of protecting his assets, the deed is operative for all purposes, including an intent to gift the property to appellant. This argument ignores the basic finding in Utsch that the deed of gift, in itself, shows donative intent and parole evidence cannot be used to contradict the unambiguous terms of the deed of gift. Further, the language in Utsch relied upon by the wife is *dicta*.[9] Its inclusion in the Utsch opinion is not necessary to the resolution of the narrow issue in that case, which is only whether or not parole evidence may be admitted to prove intent on a deed of gift "unambiguous on its face." Id. at 127, 581 S.E.2d at 509.

We conclude that the trial court did not err in finding that appellant did not meet her burden of proof to show these property transfers were gifts. There is sufficient evidence to support the trial court's ruling.

## VI.  RETROACTIVE AWARD - CHILD SUPPORT

Wife contends the trial court erred in not making the child support award retroactive to the date of the filing of the original bill of complaint. Wife claims that pursuant to Code

---

[9] *Dicta* in a prior decision generally refers to that portion of an opinion "'not essential'" to the disposition in the case. Newman v. Newman, 42 Va. App. 557, 565, 593 S.E.2d 533, 537 (2004) (*en banc*) (quoting Cent. Green Co. v. United States, 531 U.S. 425, 431 (2001)).

- 17 -

§ 20-108.1(B)[10] she was entitled to retroactive support from November 6, 2001. Husband

contends that his commitment to "maintain the financial status quo for the time being" satisfied

his child support obligation pending the outcome of this litigation.

Husband argued below that he should be given a credit for payments made under a

"status quo" agreement if the trial court made a retroactive award. The trial court, in refusing to

order child support retroactively from the date of filing, ruled:

> I think that, generally speaking, the fact that there was a status quo
> arrangement between these parties whereby -- as I said, generally
> speaking -- Mr. Cirrito continued to pay the majority of the
> household expenses -- and of course, the biggest expense, I
> suppose, is the mortgage -- makes any kind of effort that I would
> make to retroactively calculate child support kind of -- "ridiculous"
> is a hard word -- it's very difficult for me to make any real
> accounting sense and to go back and do that given the amount of
> money that Mr. Cirrito has paid.
>
> To some extent, you know, all of those expenses that maintain the
> house also, of course, maintain a roof over Tommy's head, so I'm
> not going to do that. I think that he has paid equivalent to a
> <u>pendente</u> <u>lite</u> order and -- although the parties called it a status quo
> order -- so my order, then, will become effective -- I think
> everyone concedes -- June 1st in terms of child support, and as I
> understand Mr. Cottrell, Mr. Cirrito has paid that.
>
>         *     *     *     *     *     *     *
>
> Okay. So I agree that there's going to be no adjustment on child
> support. The status quo arrangement has to be meaningful. It has
> to mean something. And it was what the attorneys worked out.
> And as I said, I think it has the equivalent effect of a <u>pendente</u> <u>lite</u>
> order.

---

[10] Code § 20-108.1(B) provides in part:

> Liability for support shall be determined retroactively for the
> period measured from the date that the proceeding was
> commenced by the filing of an action with any court provided the
> complainant exercised due diligence in the service of the
> respondent . . . .

- 18 -

Thus, the trial court concluded that the voluntary "status quo" payments were the equivalent of a *pendente lite* order, satisfying the requirements of Code § 20-108.1(B).

Interestingly, both appellant and appellee argue whether or not the "status quo" payments were "non-conforming payments" under Gallagher v. Gallagher, 35 Va. App. 470, 546 S.E.2d 222 (2001).[11] Husband acknowledges that he had an obligation to pay child support, yet contends that he should receive credit for the voluntary payments he made. He argues that his previous payments (including mortgage, maintenance and taxes on the home) satisfied the requirements of child support since the benefit of such payments ultimately inured to the child. Wife contends those payments, consisting mostly of mortgage payments and related housing expenses, inured to husband's benefit since the trial court ruled the house was his separate property.

That analysis is of no value to the resolution of this issue. The issue before us is not whether the trial court properly considered credits based on husband's "status quo" payments. As this argument is not part of the questions presented that were designated for appeal, we will not address this issue. See Rule 5A:20(c)-(e); Hillcrest Manor Nursing Home v. Underwood, 35 Va. App. 31, 39 n.4, 542 S.E.2d 785, 789 n.4 (2001) (finding "an issue [was] not expressly stated among the 'questions presented,' . . . we, therefore, decline to consider [it] on appeal"). The only issue before us is whether the trial court erred in not making the child support payments retroactive to the date of filing the original bill of complaint.

---

[11] In limited instances, this Court has recognized that where the purpose of a child support award has been achieved, although in ways that deviate from the express court order, the obligor may be credited with support as though in compliance with the court order. Acree v. Acree, 2 Va. App. 151, 342 S.E.2d 68 (1986) (entitling father to credit for non-conforming child support payments when, by agreement of the parties, child support payments were suspended after the father assumed physical custody but obtained no modification of the decree of support). See Gallagher, 35 Va. App. at 476, 546 S.E.2d at 225 (allowing a party credit for non-conforming support payments, provided that the non-conforming support payment substantially satisfies and does not alter the purpose and function of the original support award).

Code § 20-108.1 controls the award of child support payments. The General Assembly amended the statute in 1996 to specifically mandate that "[l]iability for support shall be determined retroactively for the period measured from the date that the proceeding was commenced by the filing of an action with any court." In its ordinary use, "'shall' is a word of command, and is the language of command, and is the ordinary, usual, and natural word used in connection with a mandate." Last v. Virginia State Bd. of Med., 14 Va. App. 906, 911, 421 S.E.2d 201, 205 (1992) (quoting Andrews v. Shepherd, 201 Va. 412, 414, 111 S.E.2d 279, 281 (1959)). "Shall," however, does not always impose a mandatory condition. Cook v. Radford Community Hospital, Inc., 260 Va. 443, 447, 536 S.E.2d 906, 908 (2000) (citing White v. Morano, 249 Va. 27, 32, 452 S.E.2d 856, 859 (1995)). As the Supreme Court of Virginia stated in TM Delmarva Power v. NCP of Virginia, 263 Va. 116, 121, 557 S.E.2d 199, 201 (2002),

> while the word "shall" is primarily mandatory in effect, and "may" is primarily permissive in effect, courts, in endeavoring to arrive at the meaning of written language, whether used in a will, a contract, or a statute, will construe "may" and "shall" as permissive or mandatory in accordance with the subject matter and context.

Here, we are dealing with the support of children. In this context, it is apparent the legislature intended that "shall" be mandatory. This language provides a substantive right to children. There is no latitude under the statute. See also Code § 20-108 (no support order may be retroactively modified, but may be modified with respect to any period during which there is a pending petition for modification in any court, but only from the date that notice of such petition has been given to the responding party). Under Code § 20-108, the legislature gave the trial court the discretion in modifying support during the pendency of the petition. Such is not the case in Code § 20-108.1.

The husband further argues that the granting of retroactive support is a windfall and would contravene public policy of voluntary settlements. "[I]t is the responsibility of the

legislature, not the judiciary, to formulate public policy, to strike the appropriate balance between competing interests . . . ." Wood v. Bd. of Supervisors of Halifax Cty., 236 Va. 104, 115, 372 S.E.2d 611, 618 (1988). We therefore decline to address this argument.

We find that the trial court erred in not awarding child support from the date of the commencement of the proceeding. We do not address whether husband is entitled to any credits for his voluntary payments or whether the court can consider these payments as deviation factors under Code § 20-108.2. We remand for the trial court to enter an order consistent with this opinion.

## VII.  EXPERT REPORTS

In December, 2002, the husband issued a Second Request for Admissions to wife asking, in part, the wife to admit certain property was husband's separate property. Husband also issued a corresponding Third Set of Interrogatories directing that:

> For any of the Second Request for Admissions served
> simultaneously herewith which you have not admitted, state in
> detail and particularity your basis and reasons for not admitting
> each such Request and identify all documents, if any, on which
> you rely in support of your reasons for not admitting the Request.

Wife responded that the information requested was presently unknown to her because to answer would require the assistance of experts who have not yet been identified.

In January of 2003 husband filed a "Motion to Deem Defendant's Second Requests for Admissions Admitted or to Compel Complainant's Unequivocal Response to the Same and to Compel Complainant's Response to Corresponding Interrogatory." Husband asked for the following relief:[12]

> 1. That the Defendant's Second Requests for Admissions be deemed
>    admitted or, in the alternative, that the Complainant be compelled

---

[12] Husband did submit interrogatories requesting designation of experts, but these interrogatories are not the subject of the instant motion to compel.

to immediately and unequivocally respond to Defendant's Second Requests for Admissions.

2. That the Defendant be awarded his attorneys' fees and cost expended in this behalf; and

3. That the Defendant be awarded such other and further relief as this Court deems mete and just.

On January 24, 2003 the trial court heard arguments on the motion. The court ordered that wife (1) respond to the Second Request for Admission; (2) provide substantive answers to husband's Third Set of Interrogatories; and (3) provide husband with wife's expert's reports. Wife argued that the motion before the court was only to "update" her responses to the Requests for Admissions and Interrogatories and not to turn over her expert reports. Wife endorsed the written order "Seen."

The court gave the wife until February 3, 2003 to provide the expert's reports to husband and continued the matter to February 7, 2003. On February 11, 2003 the court issued an opinion letter stating, in part, that wife had failed to comply with the January 24, 2003 order. Although wife furnished husband with three reports, the court found one report (Tolsdorf's) to be "insubstantial" and "uninformative" and ruled that Tolsdorf would not be allowed to testify at trial. As to the other two experts, the court found that those reports addressed only three of the five issues outlined in the report. As a result, those experts would be limited to testifying to only those three issues discussed in the report.

The trial court said in its opinion letter:

> In reaching the decision contained in this letter opinion, I am
> constrained to say that the relief I have granted Mr. Cirrito may be
> problematic for the reasons I will set forth immediately below.
> However, I grant this relief on account of the circumstances of this
> case and the wholesale failure of Mrs. Cirrito, having been
> furnished multiple continuances, both to comply with discovery
> and to comply with Judge MacKay's January 24 order. The two
> problematic circumstances that trouble me are these. First, neither
> in early December, 2002, nor in January, 2003, did Mr. Cirrito

attempt to compel Mrs. Cirrito to furnish the Rule 4:1 information relating to her experts. However, he did propound requests for admissions, and I conclude that by propounding complimentary discovery requiring Mrs. Cirrito to furnish the reasons she could not furnish reasons for answering such discovery, he essentially sought the same relief. Second, the February 7 hearing was scheduled for the purpose of determining whether or not Mrs. Cirrito had complied with Judge MacKay's order. Although such a hearing was discussed in Judge MacKay's January 24 order, it was not set in that order or otherwise framed by a motion or praecipe filed with the Clerk. However, it is plain that both parties were prepared to address the issue of compliance with the January 24 order; and Mrs. Cirrito's counsel did not contend that she lacked notice of the hearing or its purpose. That said, Mr. Cottrell did not file a Rule 4:12 motion seeking sanctions beyond his request to have the admissions deemed admitted. This raises a question whether or not this Court was authorized to grant relief -- other than deeming the facts and matters framed by his admission requests -- admitted. I conclude that the relief I have ordered is less onerous than deeming the matters admitted. And I have done so, out of caution.

The order incorporating the opinion letter was entered February 28, 2003. Wife endorsed the order "Seen and objected to."

We find the trial court erred in directing the wife to provide husband with her expert's reports and imposing sanctions.

Wife contends on appeal that the trial court had no authority to direct her to provide husband with her expert's reports because husband never requested them in discovery. Husband argues that our consideration of this issue is defaulted because wife endorsed the court order

- 23 -

"Seen" without objection and agreed during the January 24, 2003 hearing to deliver her reports to him. We conclude that this issue is not barred by Rule 5A:18.[13]

After the trial court instructed wife to provide her expert's reports, counsel remarked:

> There's nothing on the motion today about me turning over my expert's reports. I'm saying that the motion before the Court today is for me to update my responses to the requests to admissions and to update the answers to interrogatories.

The court later commented:

> Well, he's not even agreeing to give you the report. I'm trying to cut down on the paperwork. If you got the report on Friday, you want the responses to discovery at the same time?

The court then inquired of the husband's counsel, "And you think I have the authority to order him to turn over the report?" Finally, at the February 7, 2003 hearing wife again told the court that there "was never a motion in this court for us to furnish the names of our experts or to furnish expert reports."

The main purpose of requiring timely specific objections is to afford the trial court an opportunity to rule intelligently on the issues presented, thus avoiding unnecessary appeals and reversals. Weidman v. Babcock, 241 Va. 40, 44, 400 S.E.2d 164, 167 (1991). The purpose of Rule 5A:18 is to allow the trial court to correct in the trial court any error that is called to its attention. Lee v. Lee, 12 Va. App. 512, 514, 404 S.E.2d 736, 737 (1991). Clearly, the wife alerted the court to the issue that turning over the reports was not noticed and was not before the

---

[13] Rule 5:A:18 states:

> No ruling of the trial court or the Virginia Workers' Compensation Commission will be considered as a basis for reversal unless the objection was stated together with the grounds therefor at the time of the ruling, except for good cause shown or to enable the Court of Appeals to attain the ends of justice. A mere statement that the judgment or award is contrary to the law and the evidence is not sufficient to constitute a question to be ruled upon on appeal.

court. Although counsel endorsed the January 24, 2003 order "Seen" without objection, her comments during the hearing and the court's subsequent responses indicate that the wife took exception to the court's order directing her to provide husband with her expert's reports. We find no merit in husband's contention that wife's "guarantee" to provide the expert opinions at the close of the hearing was an abandonment of her objection. We hold that the issue was preserved and that we may consider this issue.

Wife argues on brief that no notice was given to her that this issue would be raised at the January 24, 2003 hearing and the trial court had no authority to order her to turn over her reports because no such motion was before the court. We agree. The motion before the court on that date sought only to compel wife to answer husband's requests for admissions, and in the alternative, to deem the requests admitted pursuant to Rule 4:11. Husband did not seek to compel responses to interrogatories under Rule 4:12, nor did he seek discovery of wife's expert's reports. [14]

"Fundamental rules of pleading provide that no court can base its judgment or decree upon a right which has not been pleaded and claimed." Boyd v. Boyd, 2 Va. App. 16, 18, 340 S.E.2d 578, 580 (1986). The purpose in requiring "pleadings is to give notice to the opposing party of the nature and character of the claim, without which the most rudimentary due process safeguards would be denied." Id. at 19, 340 S.E.2d at 580.

> "The basis of every right of recovery under our system of jurisprudence is a pleading setting forth facts warranting the granting of the relief sought. It is the *sine qua non* of every judgment or decree. No court can base its decree upon facts not alleged, nor render its judgment upon a right, however meritorious, which has not been pleaded and claimed. . . . Pleadings are as essential as proof, the one being unavailing without the other. A decree cannot be entered in the absence of pleadings upon which to found the same, and if so entered it is void . . . . Every litigant is

---

[14] We are not addressing the issue of whether a party is entitled to copies of expert reports.

- 25 -

> entitled to be told by his adversary in plain and explicit language what is his ground of complaint or defense . . . . The issues in a case are made by the pleadings, and not by the testimony of witnesses or other evidence."

Gologanoff v. Gologanoff, 6 Va. App. 340, 346, 369 S.E.2d 446, 449 (1988) (citations omitted).

Because the husband never asserted a request for the reports, we find that the court erred in granting husband relief he never sought.

The wife further asserts that the trial court improperly imposed sanctions for her failure to provide a complete expert designation, including reports, although no motion to compel nor motion for sanctions was before the court. Again, husband claims that wife did not properly preserve this issue as required by Rule 5A:18. He argues that wife objected to the order for sanctions only to the extent that she believed she had complied with the January 24, 2003 order and not that the motions were not properly docketed. We conclude that wife sufficiently preserved the question for review.

It is clear by the court's opinion letter that the court understood the issue of the propriety of sanctions. The opinion letter sets forth the challenged issue, referring to it as "problematic," and the wife preserved it by her general objection to the entry of the February 28, 2003 order. Although counsel failed to include any specific grounds for the objection on the written order, the ruling made by the trial court was narrow enough to make obvious the basis of appellant's objection. See Mackie v. Hill, 16 Va. App. 229, 231, 429 S.E.2d 37, 38 (1993). Accordingly, we hold that Rule 5A:18 was met in this case and that we may consider the merits of appellant's assignment of error.

Rule 4:1(b)(4)(A)(i) sets forth how a party can, through interrogatories, discover whom the other party expects to call as an expert witness at trial, the subject matter on which the expert is expected to testify, and the substance of the facts and opinions to which the expert is expected to testify. Rule 4:12 addresses sanctions:

1. Upon notice, a party may seek an order compelling discovery.

2. The court may order compliance.

3. If the court order compelling discovery is violated, the court "may make such orders in regard to the failure as are just."

Rule 4:11(a) sets forth sanctions for not complying with requests for admission. The court may order the matter admitted or allow an amended answer to be served.

We conclude that the trial court here did not follow established discovery procedure. The trial court acknowledged that husband never asked wife to furnish expert information pursuant to Rule 4:1. The court recognized that the husband did not, in his January 2003 motion, attempt to compel the wife to furnish Rule 4:1 information relating to her experts. The court, however, concluded that the requests for admission, combined with the interrogatories, sought the same information as a Rule 4:1 request for identification of experts and was therefore the equivalent of a Rule 4:1 request. Such was the court's basis for imposing sanctions when the wife did not comply with the order directing her to reveal her expert's reports.

As a matter of law, husband's Second Request for Admissions and Third Set of Interrogatories did not authorize him to require wife to identify experts or provide expert reports under Rule 4:1. The interrogatories did not seek to identify experts. They did not attempt to elicit a response concerning experts. Similarly, the requests for admission simply sought classification of property.

In not following correct procedure, the trial court "short circuited" the legal process. See Walsh v. Bennett, 260 Va. 171, 176, 530 S.E.2d 904, 907 (2000). The husband never asked for the expert reports pursuant to Rule 4:1. The husband never made a motion to compel the reports and never asked for sanctions for wife's failure to comply with Rule 4:1. The court recognized that husband never filed a Rule 4:12 motion seeking sanctions. Still, the trial court unnecessarily

"short circuited" the legal process by prematurely imposing sanctions and preventing the wife from presenting evidence through her expert witnesses. While we acknowledge the court was attempting to impose sanctions "less onerous" than deeming the Requests for Admissions admitted, the court erred in not following the Rules.

We find that the trial court did not properly follow the discovery process. The court erred by limiting the testimony of wife's expert witnesses.[15]

CONCLUSION

We find that the trial court did not err in (1) determining that wife had the burden to prove husband's significant personal efforts were the proximate cause of a substantial increase in the value of certain assets, and (2) finding that jointly titled property was not gifted to wife. We find that the trial court erred in (1) determining a payment to husband pursuant to a non-compete agreement was husband's separate property, (2) refusing to award child support retroactive to the date the divorce was filed, and (3) ordering wife to produce expert reports and excluding and limiting certain expert testimony at trial. Accordingly, we remand the issues of child support and the non-compete payment for the trial court to enter orders consistent with this opinion. We remand to the trial court for a determination of attorney's fees, discovery issues, and the equitable distribution issues discussed herein.

Husband has requested attorney's fees for matters relating to this appeal. Upon consideration of the entire record in this case, we deny husband's request. See O'Loughlin v. O'Loughlin, 23 Va. App. 690, 479 S.E.2d 98 (1996).

Affirmed, in part,
reversed and remanded,
in part.

---

[15] We understand that additional discovery may be necessary based on this opinion. Any violations of any future discovery must be addressed pursuant to Rule 4.1. We, here, do not address whether Rule 4:1 requires the disclosure of expert reports.