UNPUBLISHED

COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Huff, Judges Decker and AtLee
Argued at Chesapeake, Virginia

JESSICA GAY

                                                    MEMORANDUM OPINION[*] BY
v.       Record No. 0887-17-1                       CHIEF JUDGE GLEN A. HUFF
                                                    OCTOBER 10, 2017
VIRGINIA BEACH DEPARTMENT
 OF HUMAN SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
A. Bonwill Shockley, Judge

Mykell Messman (Messman Law, PLC, on brief), for appellant.

Elena E. Ilardi, Associate City Attorney (Mark D. Stiles, City
Attorney; Christopher S. Boynton, Deputy City Attorney; Leilani
Adams, Guardian *ad litem* for the infant children; Thomas &
Associates, on brief), for appellee.


Jessica Gay ("appellant") appeals the order of the Circuit Court of the City of Virginia

Beach ("circuit court") terminating her residual parental rights, pursuant to Code § 16.1-283(C),

with regards to two of her children, R.G.-B. (born December 13, 2004) and R.D. (born

November 5, 2006).[1]  On appeal, appellant contends that the evidence was insufficient to prove

the statutory factors for termination and that the circuit court considered inadmissible evidence.

For the following reasons, this Court affirms the circuit court's order of termination.

I.  BACKGROUND

"When reviewing a trial court's decision on appeal, we view the evidence in the light

most favorable to the prevailing party, granting it the benefit of any reasonable inferences."

Congdon v. Congdon, 40 Va. App. 255, 258, 578 S.E.2d 833, 835 (2003) (citing Wright v.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] Appellant also has a third child, N.G.-B., who is not a subject of this appeal.

Wright, 38 Va. App. 394, 398, 564 S.E.2d 702, 704 (2002)).  So viewed, the evidence is as follows.[2]

The Virginia Beach Department of Human Services ("DHS") assumed custody of the children in October 2013 when a relative who was caring for them fell ill while appellant was in jail.  DHS developed an initial foster care plan during appellant's incarceration with a goal of eventually returning the children to her care.  The plan required appellant to take a parenting class, complete a parenting capacity evaluation with treatment recommendations, find stable housing and employment, develop a community support system, attend visitations, and cooperate with DHS.

Following her release on January 4, 2014, appellant moved to New York to live with her fiancé.  While there, appellant completed the parenting class, but she only attended nine of seventeen scheduled visitations and tested positive for marijuana.  Appellant then returned to Virginia Beach, where she obtained seasonal employment as a housekeeper and attended visitations sporadically.  During a series of permanency planning hearings in the Virginia Beach Juvenile and Domestic Relations District Court ("JDR court") which began in October 2014, DHS required appellant to submit to drug testing, complete a parental capacity evaluation, and participate in therapy based on the results of that evaluation.  Although she completed the parental capacity evaluation, by September 2015 appellant had not secured stable housing and failed a second drug test.  In addition, appellant's foster care worker advised her that the children experienced behavioral problems while in foster care attributable, at least in part, to appellant's "inconsistent visitation with them."

_____

[2] As the parties are fully conversant with the record in this case, and because this memorandum opinion carries no precedential value, this opinion recites only those facts and incidents of the proceedings as are necessary to the parties' understanding of the appeal.

Recognizing that the children had been in foster care for nearly two years at this point, the JDR court included a special notation in its September 30, 2015 permanency planning order articulating precisely what it expected of appellant to fulfill the plan:

> The Court is requiring [appellant] to get into regular individual counseling a minimum of twice a [month], preferably weekly forthwith. Any transition into [appellant's] care shall require a supervision plan for the child, a new hair follicle test on [appellant] that demonstrates no illegal drug use since this hearing; [appellant] shall have a phone or a way to be reached and [appellant] shall cooperate with a parenting coach and in home services which shall be paid by [the Family Assistance and Planning Team] in order for the Court to approve and order transferring custody to [appellant].

From the time of this hearing and into 2016, appellant did not comply with the JDR court's requirements. She attended only four therapy sessions during the six-month period following the hearing. She secured an appropriate apartment with DHS financial assistance, but was evicted after three months—a fact DHS only learned from a third party as appellant refused to provide proof of rent payment. Appellant's employer again laid her off in the fall of 2015 due to the seasonal nature of her employment, and appellant did not secure winter employment. She became less responsive during this period such that her parent coach had difficulty contacting her for appointments and visitations. Further, she refused a court-ordered drug test.

In light of appellant's lack of cooperation, the JDR court amended the permanent goal to relative placement/adoption rather than the previous goal of returning the children to appellant. DHS identified two relatives as potential placements for the children, but neither completed the requisite foster parent training. DHS again revised its permanency plan to reflect a goal of adoption. During a hearing on September 7, 2016, which appellant did not attend, the JDR court terminated appellant's residual parental rights as to the children and entered a permanency planning order approving the goal of adoption.

A *de novo* trial before the circuit court took place on March 7, 2017. At that time, appellant remained unemployed awaiting the beginning of her seasonal employment, was no longer attending therapy, and was living with her mother—a habitation ineligible for placement due to a prior child protective services finding against the mother.

At trial, DHS called Arlene Agustin ("Agustin"), a former Virginia Beach child protective services investigator, to testify regarding a 2007 investigation regarding the death of appellant's infant son. Agustin testified that appellant lived with her mother at that time in a home that had "concerning" living conditions, including burned walls from a kitchen fire, vermin, and exposed wiring. Appellant did not have a room or bed for her family; instead, appellant slept on a couch holding then two-month-old R.D. in her arms, the infant son at her feet, with two-year-old R.G.-B. and three-year-old N.G.-B. both sleeping on the floor beside the couch. One night during this period, R.G.-B. ended up atop the infant son, resulting in the infant's death and prompting an investigation. Agustin testified that the incident and living conditions resulted in a level one child protective services finding for physical neglect and inadequate shelter against appellant. Appellant objected to the relevance of this testimony, but the circuit court overruled the objection.

DHS also called Lorelei Jones ("Jones"), a DHS case worker who testified regarding her familiarity with appellant's family, and particularly appellant's mother. Jones noted that she had concerns with appellant's mother including her alcoholic tendencies. She likewise testified that she had investigated other family members to determine whether they could be potential placement options. As with Agustin, appellant objected to the relevance of Jones' testimony and the circuit court again overruled the objection.

In uncontested testimony, Jones stated that R.D. still had emotional and behavioral issues at the time of trial, but that R.G.-B. had improved over her time in foster care. R.G.-B. required

less ADHD medication and had a deeper relationship with her foster family. Jones observed that R.D. and R.G-B. do not get along well together, noting that they physically fought when she first became involved in the case and continued to engage in frequent verbal altercations at the time of trial. As a result, the children's therapist recommended that it would be in their best interests to be separated for their permanent placements.

Ultimately, the circuit court ordered the termination of appellant's residual parental rights to R.G.-B. and R.D. pursuant to Code § 16.1-283(C)(2), and this appeal followed.

## II. STANDARD OF REVIEW

This Court employs a familiar standard of review on appeal of a circuit court's decision to terminate parental rights:

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests. On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests."

Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (quoting Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id. (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)). "In its capacity as factfinder, therefore, the circuit court retains 'broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 266, 616 S.E.2d 765, 769 (2005) (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795).

Similarly, "[t]he admissibility of evidence is within the broad discretion of the trial court, and a ruling will not be disturbed on appeal in the absence of an abuse of discretion." Logan, 13 Va. App. at 132, 409 S.E.2d at 465 (quoting Blain v. Commonwealth, 7 Va. App. 10, 16, 371 S.E.2d 838, 842 (1988)). "Likewise, a court's determination and weighing of the probative value of evidence 'rests *largely* with the trial court and will be reviewed only for an abuse of discretion.'" Id. (quoting Lewis v. Commonwealth, 8 Va. App. 574, 579, 383 S.E.2d 736, 740 (1989)).

III.  ANALYSIS

Appellant's assignments of error fall into two categories:  assignments one, two, and three allege that insufficient evidence supported the circuit court's termination decision, while assignment four contends the circuit court erred in admitting testimony by Agustin and Jones regarding DHS's 2007 investigation and dealings with appellant's family members.

A.  Evidentiary Sufficiency

Appellant's first three assignments of error argue that the circuit court's decision was "contrary to the law and evidence," that DHS did not meet "its burden of proving all statutory factors," and that termination was not "in the best interests of the children."  For the following reasons, this Court disagrees with appellant and finds the evidence sufficient to support the circuit court's ruling.

Code § 16.1-283(C) governs the termination of parental rights in this case:

> The residual parental rights of a parent . . . of a child placed in foster care as a result of court commitment . . . may be terminated if the court finds, based upon *clear and convincing evidence*, that it is *in the best interests of the child* and that:
>
> . . . .
>
> 2.  The parent . . . , without good cause, [has] been unwilling or unable within a reasonable period of time *not to exceed 12 months* from the date the child was placed in foster care *to remedy*

- 6 -

> *substantially the conditions which led to or required continuation of the child's foster care placement*, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

(Emphasis added). Proof that the parent, without good cause, has not made "substantial progress towards elimination of the conditions . . . in accordance with [that parent's] obligations under and within the time limits or goals set forth in a foster care plan" constitutes *prima facie* evidence of failure to remedy the conditions. Id. The court must also consider "prior efforts of [rehabilitative] agencies to rehabilitate the parent . . . prior to the placement of the child in foster care." Id. Thus, DHS was required to present clear and convincing evidence sufficient to satisfy these elements.

Under this Court's precedent, "clear and convincing evidence" refers to

> [t]hat measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is required beyond a reasonable doubt as in criminal cases. It does not mean clear and *unequivocal*.

Cirrito v. Cirrito, 44 Va. App. 287, 303 n.8, 605 S.E.2d 268, 275 n.8 (2004).

Unlike the requisite judicial finding of neglect or abuse required to terminate parental rights under Code § 16.1-283(B), "[s]ubsection C termination cases . . . start off with no such finding of parental culpability." Toms, 46 Va. App. at 271, 616 S.E.2d at 772. Instead, subsection C cases are "[c]onsiderably more 'retrospective in nature'" and focus on "the demonstrated failure of the parent to make reasonable changes" during the period in which he or she has been offered rehabilitative services. Id. (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)). Code § 16.1-283(C)(2) sets forth two inquiries courts must undertake in termination cases: first, the court must determine the child's best interests, and second, it must examine the parent's progress

in remedying the conditions that lead to foster care within a one-year period. See Richmond Dep't of Soc. Servs. v. Crawley, 47 Va. App. 572, 579, 625 S.E.2d 670, 673 (2006).

Regarding the child's best interests,

> a court must evaluate and consider many factors, including the age and physical and mental condition of the child or children; the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the child or children; the role which each parent has played, and will play in the future, in the upbringing and care of the child or children; and such other factors as are necessary in determining the best interests of the child or children.

Barkey v. Commonwealth, Alexandria Dep't of Human Servs., 2 Va. App. 662, 668, 347 S.E.2d 188, 191 (1986).

As to the second inquiry, "[a]bsent 'good cause,' a parent or parents receiving the 'reasonable and appropriate' services of 'rehabilitative agencies' must 'remedy substantially' the 'conditions which led to . . . foster care' of the child in a 'reasonable period not to exceed twelve months.'" Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995) (quoting Code § 16.1-283(C)(2)). "The statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Id.

> The phrase, "within a reasonable time" is an important element of the statutory scheme. One of the goals of the Commonwealth, as noted, is to maintain the family structure in all possible circumstances. The Code recognizes, however, that there are circumstances in which this will not be possible. It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his responsibilities.

Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Viewing the evidence in this case in the appropriate light, this Court holds that the circuit court did not err in finding the evidence sufficient to terminate appellant's parental rights. The

record reveals that the circuit court had ample evidence from which to conclude that appellant had been unwilling or unable to remedy the conditions that required foster care placement within a reasonable time and that placement with appellant was not in the children's best interests. Appellant's lack of consistent stable employment and housing were primary factors in the children's initial placement in foster care. By the time of the circuit court trial over three years later, appellant had only found seasonal employment, was unemployed at the time, and lacked housing suitable for the children's return. Further, appellant grew increasingly uncooperative as time went on: she refused to take drug tests, ignored DHS attempts to reach her to provide services, concealed that she had been evicted, and remained inconsistent in her visitation attendance—a failure that contributed to the children's behavioral problems. The statute seeks improvement within twelve months, but throughout the years of foster care this case spans, appellant demonstrated little ability to improve beyond her initial condition. DHS is not obligated to "force its services upon an unwilling or disinterested parent." Harris v. Lynchburg Div. of Social Services, 223 Va. 235, 243, 288 S.E.2d 410, 415 (1982).

Moreover, the circuit court also had ample evidence that termination was in the children's best interests. The record indicates that both children experienced improvement in their behavior and stability during their time in foster care, but appellant's inconsistent visitation impeded this progress. Additionally, citing their contentious relationship with each other, the children's therapist recommended that they be placed separately—a result fundamentally inconsistent with returning them to appellant. The evidence before the circuit court therefore supported its conclusion that termination of appellant's residual parental rights was appropriate. Accordingly, this Court holds that the circuit court's termination decision was not plainly wrong or without evidence to support it.

B.  Admissibility of the Evidence

Appellant's fourth assignment of error contends that the circuit court abused its discretion by "allowing evidence of a prior incident investigated by DHS," referring to Agustin's testimony regarding the 2007 infant death investigation, and "allowing evidence of DHS dealings with [appellant's] extended family," referring to Jones's testimony regarding her experience with appellant's mother and other family members.  Because both witnesses' testimony was relevant and probative, this Court finds that the circuit court did not abuse its discretion by admitting it.

Appellant argues that the testimony at issue was irrelevant and highly prejudicial.  Although "[a]ll relevant evidence is admissible," Va. R. Evid. 2:402, even relevant evidence is subject to exclusion if "the probative value of the evidence is substantially outweighed by . . . the danger of unfair prejudice," Va. R. Evid. 2:403(a)(i).  "When balancing these considerations, it is of course true that 'all probative direct evidence generally has a prejudicial effect to the opposing party.'"  Commonwealth v. Proffitt, 292 Va. 626, 635, 792 S.E.2d 3, 7 (2016) (quoting Lee v. Spoden, 290 Va. 235, 251, 776 S.E.2d 798, 806 (2015)).  The relevant question for this analysis is therefore "whether the probative value of the evidence is substantially outweighed by its *unfair* or *unduly* prejudicial effects."  Lee, 290 Va. at 252, 776 S.E.2d at 807.

Agustin's testimony was relevant to the circuit court's inquiry into appellant's present ability to care for her children.  This testimony indicates that appellant has a history of child care issues, which was highly probative, particularly in light of appellant's failure to remedy the deficiencies causing the initial foster care placement over the period prior to trial.  That the events forming the basis of Agustin's testimony occurred a decade ago is of no consequence.  "Virginia law recognizes the 'maxim that, sometimes, the most reliable way to gauge a person's future actions is to examine those of [her] past.'  As many courts have observed, one permissible 'measure of a parent's future potential is undoubtedly revealed in the parent's past behavior with

the child.'" Toms, 46 Va. App. at 268, 616 S.E.2d at 770 (quoting Petry v. Petry, 41 Va. App. 782, 793, 589 S.E.2d 458, 463 (2003)).

Jones's testimony was likewise relevant and probative in light of DHS's duty to consider placements with relatives. See Code § 16.1-283(A) (requiring in termination cases that "the court shall give a consideration to granting custody to relatives of the child, including grandparents"). Jones's prior experiences and opinions concerning appellant's mother were also relevant and probative to the circuit court's decision, given that appellant resided with her mother at the time of the circuit court trial and hoped the children could be placed with her there.

Accordingly, this Court holds that the circuit court did not abuse its discretion in admitting the testimony from Jones and Agustin.

IV. CONCLUSION

For the foregoing reasons, this Court affirms the circuit court's decision to terminate appellant's residual parental rights.

<u>Affirmed.</u>