COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Russell and AtLee
Argued at Richmond, Virginia

**PUBLISHED**

KATHRYN JOHNSON, S/K/A
  KATHRYN EILEEN JOHNSON

v.      Record No. 1478-17-2

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE RANDOLPH A. BEALES
MARCH 5, 2019

FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
W. Allan Sharrett, Judge

James B. Thorsen (ThorsenAllen, LLP, on brief), for appellant.

Eugene Murphy, Senior Assistant Attorney General (Mark R.
Herring, Attorney General, on brief), for appellee.


Kathryn Johnson was found guilty of eluding police in violation of Code § 46.2-817.

That statute provides that it shall be an affirmative defense if the defendant shows she reasonably

believed she was being pursued by a person other than a law-enforcement officer.  On appeal,

Johnson asserts that, pursuant to the statute's affirmative defense, the trial court erred in refusing

to admit expert testimony concerning her mental state at the time of her violation.

I. BACKGROUND

"Under familiar principles of appellate review, we will state 'the evidence in the light

most favorable to the Commonwealth, the prevailing party in the trial court, and will accord the

Commonwealth the benefit of all reasonable inferences fairly deducible from that evidence."

Sidney v. Commonwealth, 280 Va. 517, 520 (2010) (quoting Murphy v. Commonwealth, 264

Va. 568, 570 (2002)).

On January 21, 2016, at approximately 10:30 p.m. Trooper David Pendergrass of the Virginia State Police was traveling southbound on Interstate 85 when he observed a vehicle pass him "at a very high rate of speed." He accelerated in order to catch up with the vehicle, and estimated the vehicle was traveling at approximately 118 miles per hour. At mile-marker 22, Trooper Pendergrass activated his lights. The vehicle "eased over on the right shoulder like they were going to stop" but passed a vehicle on the shoulder and pulled back into the travel lane. Trooper Pendergrass then activated his siren. He continued to pursue the vehicle, which maintained speeds of between 100 and 115 miles per hour until the vehicle exited at Exit 15, crossed over the median strip, and then re-entered I-85. The vehicle continued on I-85, then took Exit 12, into the Town of South Hill. The vehicle passed through three traffic lights at a speed of about 100 miles per hour. When the vehicle attempted a right turn at a traffic light, "the back end sort of broke loose on the car and it skipped up on the sidewalk and got hung in the bushes," finally bringing the car to a stop. Trooper Pendergrass estimated that from the time he encountered the car, it had passed about 25 or 30 vehicles before coming to a stop.

Trooper Pendergrass approached the vehicle and found Johnson to be the sole occupant. When he asked her why she did not stop, she eventually responded that her boyfriend was chasing her. He placed her under arrest and transported her to the Meherrin River Regional Jail. While he was transporting her, she said, "There's a lot of blood," and stated that she had been raped as a child.

Johnson was tried in a bench trial for the charges of felony eluding police, misdemeanor reckless driving, and a traffic infraction of improper passing. She was ultimately convicted on all three counts although only the conviction for eluding police is at issue in this appeal.

At trial, Johnson testified that on January 20, 2016, one day prior to her incident on the interstate, her boyfriend had choked her with the straps of her purse, prompting her to leave her

Richmond house where she lived with her boyfriend. The following day, January 21, 2016, she was convinced by her friends that she should obtain a protective order against her boyfriend. She obtained the protective order at approximately 10:00 p.m., and immediately after obtaining the order, received a text from her sister encouraging her to return to her house and talk to her boyfriend. Saying that she feared that her family did not believe her, Johnson decided to drive to Atlanta to visit her godmother, whom she viewed as "more of a neutral party." She testified that she was driving to Atlanta in order to "save [her] life somehow." She stated that when she saw flashing lights behind her "the memories came flooding back" of her childhood rape and involvement in child pornography. She thought the lights were "camera flashes," and she thought, "I had to get away or they're going to kill me." She testified she did not remember hearing any sirens and also testified that the first time she realized that it was the police pursuing her was when she was approached by a police officer after she wrecked her car.

At trial, Johnson called her counselor – Lindsey Bigelow, a licensed clinical social worker – to testify. When Johnson moved to have Bigelow qualified as an expert witness, the Commonwealth objected to the anticipated testimony as pertaining to "mental health status at the time of the offense," which the Commonwealth stated was not permitted in Virginia other than in insanity pleas, as Virginia does not recognize a diminished capacity defense. Johnson argued that the affirmative defense in Code § 46.2-817 – an affirmative defense when the defendant "reasonably believed" she was being pursued by a person other than a law-enforcement officer – should be interpreted so as to allow this testimony. The trial judge recognized Bigelow as an expert in the diagnosis and treatment of post-traumatic stress disorder and permitted Bigelow to proffer the testimony that she would provide. Bigelow then testified that she had met with Johnson for treatment approximately 30 times. She opined that Johnson's strangulation by her boyfriend was a triggering event that brought back a flood of memories from Johnson's abuse as

- 3 -

a child. Bigelow testified that Johnson's "primitive brain" took over, to the suppression of her "logical brain," causing her to flee and making her "not able to think straight."

The trial judge allowed both parties to subsequently brief the issue of the admissibility of Bigelow's proffered testimony. After considering the briefs, the trial judge concluded that "essentially the defense is offering a theory of diminished capacity, which is not recognized in Virginia in the guilt phase." The judge excluded Bigelow's proffered testimony and ultimately found Johnson guilty of all three charges.

This appeal followed, in which Johnson assigned error to the trial court's refusal to admit the testimony of the defendant's expert regarding post-traumatic stress disorder as part of her affirmative statutory defense pursuant to Code § 46.2-817(B).

## II. ANALYSIS

Ordinarily, "the determination of the admissibility of relevant evidence is within the sound discretion of the trial court subject to the test of abuse of that discretion." Henderson v. Commonwealth, 285 Va. 318, 329 (2013) (quoting Beck v. Commonwealth, 253 Va. 373, 384-85 (1997)). However, "[a circuit] court by definition abuses its discretion when it makes an error of law. . . . The abuse-of-discretion standard includes review to determine that the discretion was not guided by erroneous legal conclusions." Porter v. Commonwealth, 276 Va. 203, 260 (2008) (alteration in original) (quoting Koon v. United States, 518 U.S. 81, 100 (1996)). Therefore, "evidentiary issues presenting a 'question of law' are 'reviewed *de novo* by this Court.'" Abney v. Commonwealth, 51 Va. App. 337, 345 (2008) (quoting Michels v. Commonwealth, 47 Va. App. 461, 465 (2006)). The trial judge's ruling relied upon interpretations both of the common law of Virginia and of a statute (Code § 46.2-817), which interpretations we review *de novo*.

Code § 46.2-817(B) states, in its entirety:

> Any person who, having received a visible or audible signal from any law-enforcement officer to bring his motor vehicle to a stop, drives such motor vehicle in a willful and wanton disregard of such signal so as to interfere with or endanger the operation of the law-enforcement vehicle or endanger a person is guilty of a Class 6 felony. It shall be an affirmative defense to a charge of a violation of this subsection if the defendant shows he reasonably believed he was being pursued by a person other than a law-enforcement officer.

On brief, Johnson contends that "[e]xpert testimony regarding the defendant's subjectively-held reasonable belief may be admissible, if such expert testimony is relevant to the affirmative defense." Further, she argues that "when the defendant raises an affirmative defense that requires an investigation into the defendant's state of mind, like the § 46.2-817 defense raised in this case, the inquiry does not implicate the sanity of the defendant."[1] In short, Johnson would have us conclude that this particular statute constitutes an exception to the standard rule concerning expert testimony about a defendant's mental state at the time of the offense.

At the outset of our analysis, it is worth noting that what is at issue is the admissibility of *expert* testimony. Johnson was free to (and did) present testimony – both her own and through Trooper Pendergrass on cross-examination – that was relevant to her state of mind and subjective belief at the time of her offense. That evidence was admitted, and the trier of fact was free to consider it and give it the weight he thought appropriate. See Sandoval v. Commonwealth, 20 Va. App. 133, 138 (1995) ("The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that

---

[1] Johnson argues that the statutory affirmative defense of Code § 46.2-817 is akin to the affirmative defense of self-defense and that the subjective nature of the self-defense affirmative defense (which "is always to be determined from the viewpoint of the defendant at the time he acted[,]" McGhee v. Commonwealth, 219 Va. 560, 562 (1978)), should also apply to the statutory affirmative defense. However, we find no reason to apply the subjective standard that applies in self-defense jurisprudence to the statutory affirmative defense in Code § 46.2-817.

evidence as it is presented.").  The discussion that follows concerns the admissibility of *expert* testimony concerning Johnson's state of mind.

In considering the admissibility of expert testimony concerning a defendant's mental state at the time of the commission of an offense, we are bound by the Supreme Court's decision in Stamper v. Commonwealth, 228 Va. 707 (1985).  In that case, the Supreme Court considered the question of whether Stamper, in his trial for possession of marijuana with intent to distribute, should have been allowed to introduce psychiatric testimony to prove he was manic-depressive, was in a manic state at the time of the offense, and was thus incapable of forming the intent to distribute.  In rejecting Stamper's argument, the Court noted that the "state of knowledge in the fields of medicine and psychiatry is subject to constant advance and change . . . .  The courts cannot, and should not, become dependent upon these subtle and shifting gradations for the resolution of each specific case."  Id. at 716.  The Court declared, "For the purposes of determining criminal responsibility a perpetrator is either legally insane or sane; there is no sliding scale of insanity."  Id. at 717.  The Court then conclusively held that "evidence of a criminal defendant's mental state at the time of the offense is, in the absence of an insanity defense, irrelevant to the issue of guilt."  Id.[2]

Peeples v. Commonwealth, 30 Va. App. 626 (1999) (*en banc*), was discussed on brief and at oral argument by both parties and is also instructive on this issue.  In that case, Peeples

---

[2] Concerning the insanity defense, Virginia follows the M'Naghten Rule.  See Price v. Commonwealth, 228 Va. 452, 457-59 (1984).  That Rule states

> that to establish a defence on the ground of insanity, it must be
> clearly proved that, at the time of the committing of the act, the
> party accused was labouring under such a defect of reason, from
> disease of the mind, as not to know the nature and quality of the
> act he was doing; or, if he did know it, that he did not know he was
> doing what was wrong.

Id. at 457 (quoting M'Naghten's Case, 10 Cl. and F. 200, 210, 8 Eng. Rep. 718, 722-23 (1843)).

challenged his convictions for aggravated malicious wounding and use of a firearm in the commission of an aggravated malicious wounding, arguing that the trial court erred in excluding expert testimony regarding Peeples's mental state. At trial, Peeples had asserted the defenses of heat of passion and self-defense. Relying on Stamper, which "declined to adopt a diminished capacity theory of criminal responsibility" (id. at 631), this Court upheld the convictions, finding "that the trial court did not err by excluding the expert witness' testimony regarding [the defendant's] mental state." Id. at 628. The Court found two reasons to exclude the expert testimony. First, the Court found "the expert's opinion evidence was not relevant to prove" the defendant's defenses – heat of passion and self-defense. Id. at 634. This was because of Stamper's principle of "the unsuitability of psychiatry for determining criminal responsibility in the absence of an insanity defense[,]" which principle the Court in Peeples found "applies to the expert testimony proffered in the instant case." Id. at 633. Second, "[t]aken in the light most favorable to the defendant, the evidence established neither defense for which he offered it." Id. at 634.

On brief and at oral argument, Johnson focuses on the second of the reasons provided by this Court in Peeples for the exclusion of the expert testimony. Johnson argues that, unlike in Peeples, Johnson had provided an evidentiary foundation for the proffered expert testimony through her own testimony and that of Trooper Pendergrass that she claimed supported her defense that "the PTSD intervened as a basis for establishing her reasonable belief at the time of the police pursuit." However, even if that distinction were valid (that is, even if Johnson may have offered sufficient evidence to support a theory of her suffering PTSD), the fact still remains that the first reason given by the Court in Peeples for excluding the expert testimony is still applicable here – *i.e.*, expert testimony regarding the defendant's mental state is not admissible in the absence of an insanity defense.

This Court recently considered an attempt to admit expert testimony regarding a defendant's mental state divorced from an insanity defense. The Court noted:

> By offering expert evidence of his mental state, but refusing to plead insanity, [an] appellant [may] attempt[] to avoid the rules that dictate how such evidence must be disclosed. [An] [a]ppellant essentially wants all the benefits afforded an insanity argument without the associated responsibility for notice to the court required by statute and case law.

Schmuhl v. Commonwealth, 69 Va. App. 281, 304 (2018). The trial judge in this case now before us noted just such a danger of the expert testimony proffered here becoming a "back door" to an insanity defense.

Johnson contends that the General Assembly, in passing Code § 46.2-817, made expert testimony relevant to the elements of the affirmative defense of what the defendant "reasonably believed."

> In Virginia, the "Legislature is presumed to have known and to have had the common law in mind in the enactment of a statute. The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law."

Washington v. Commonwealth, 46 Va. App. 276, 281 (2005) (*en banc*) (quoting Moses v. Commonwealth, 45 Va. App. 357, 361 n.2 (2005) (*en banc*)). In view of the discussed case law and the repeated rejection by Virginia's appellate courts of expert testimony to establish diminished capacity, and upon reading the plain language of Code § 46.2-817, we find no reason to believe that the General Assembly meant to abandon the M'Naghten Rule and the Stamper line of cases by somehow applying a new rule when enacting this particular statute.

### III. CONCLUSION

The law in Virginia concerning the admissibility of expert testimony about a defendant's mental state is clear. As the Supreme Court held in Stamper v. Commonwealth, expert testimony

about a criminal defendant's mental state at the time of the offense is – absent an insanity defense – inadmissible at trial. We hold that Code § 46.2-817 does not in any way contradict the Supreme Court's decision in <u>Stamper</u> – and does not make expert testimony concerning a defendant's mental state at the time of the offense somehow admissible at trial, without an insanity defense. The trial court did not err in finding the defendant's proffered expert testimony to be inadmissible. For all of these reasons, we affirm Johnson's conviction for eluding police in violation of Code § 46.2-817.

<u>Affirmed.</u>