COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Chief Judge Decker, Judge Beales and Retired Judge Bumgardner[*]
Argued at Richmond, Virginia


CHRISTOPHER FRANCIS CIPOLLA

                                                MEMORANDUM OPINION[**] BY
   v.      Record No. 1976-17-2            JUDGE RUDOLPH BUMGARDNER, III
                                                          JUNE 18, 2019
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Edward A. Robbins, Jr., Judge

Norman A. Thomas for appellant.

Rachel L. Yates, Assistant Attorney General (Mark R. Herring,
Attorney General, on brief), for appellee.


Christopher Cipolla appeals his convictions for indecent liberties with a minor in a

custodial relationship, Code § 18.2-370.1, forcible sodomy, Code § 18.2-67.1, and aggravated

sexual battery, Code § 18.2-67.3.  The defendant began sexually molesting his girlfriend's

daughter in 2005 when the child was six or seven years old.  The abuse continued until 2010

when the girl was in the sixth grade and asked him to stop.  However, she did not report the

defendant's conduct to the police until February 2015.[1]

The defendant contends that the trial court erred in not striking for cause Jurors 135 and

154 because "their *voir dire* responses established that they could not serve as impartial jurors

who were indifferent to the cause."  He also maintains that the trial court erred in not allowing an

_____

[*] Retired Judge Bumgardner took part in the hearing and decision of this case by
designation pursuant to Code § 17.1-400(D).

[**] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The defendant and the girl's mother had ended their relationship several years earlier.

expert witness, who had conducted psychosexual tests on the defendant, to testify in the guilt phase of the trial that the defendant "did not show any paraphilic tendencies."[2] Concluding the trial court did not err, we affirm the convictions.

"In determining whether the trial court should have excluded the prospective jurors challenged by the defendant, this Court must consider the 'entire *voir dire*, not just isolated portions.'" Lovos-Rivas v. Commonwealth, 58 Va. App. 55, 62 (2011) (quoting Juniper v. Commonwealth, 271 Va. 362, 401 (2006)). In assessing the responses during *voir dire*, the trial court must assess whether the jurors "indicate to the court something that would prevent or substantially impair the performance of [their] duties as a juror in accordance with [the court's] instructions and [the juror's] oath." Andrews v. Commonwealth, 280 Va. 231, 256 (2010) (quoting Adams v. Texas, 448 U.S. 38, 45 (1980)).

During *voir dire*, the trial court informed the prospective jurors of the offenses for which the defendant was charged. When the court said, "[i]f there is anyone who feels they have such a strong personal opinion about trials, the justice system, or the particular subject matter of this case that you cannot give each side a fair trial, please raise your hand," none of the jurors responded that they could not be impartial.

Defense counsel asked the venire whether any of their family members, their friends, or colleagues had been affected by unwanted sexual contact. Juror 135 stated that, about fifty years ago, her two sisters had experienced unwanted sexual contact from their foster parents and their father. She believed that the foster parents had been incarcerated as a result of their conduct but stated that her father had not been prosecuted. Juror 135 said that she had spoken with her sisters about the incidents, that the allegations against her father were "hard to believe," and that it had

---

[2] The expert testified without objection in the penalty phase of the trial and also at the sentencing hearing.

been "a really long time ago." Defense counsel asked, "[D]o you think this would make you kind of relive what your sisters have told you about that event, if there were some similar issues that arose?" Juror 135 responded, "I don't know. I don't know the exact issues because we were kids, you know. So I can't, you know — ." She acknowledged, however, in response to defense counsel's question, that she could not be certain that hearing similar evidence would not cause her to relive her sisters' experiences. Juror 135 was asked no further questions.

Juror 154 responded that his sister's daughter had been abused and that the matter was still pending in a court in North Carolina. Counsel then asked, "Do you think hearing something like this will make you relive the events that your niece might be talking about, or experiencing?" Juror 154 said, "Potentially." Juror 154 was not questioned further.

At the conclusion of the *voir dire*, the defendant moved to strike Jurors 135 and 154 for cause.[3] The trial court denied the motion. The trial court stated that the incidents addressed by Juror 135 had taken place no less than forty years ago. Noting that Juror 154 had said only that he would "potentially" relive what had happened to his niece, the trial court said that "it doesn't appear from what he said, or what the Court observed that [Juror 154] is anything other than indifferent to the cause."[4]

We cannot say that the trial court abused its discretion in denying the defendant's motions to strike prospective Jurors 135 and 154 for cause.[5] Jurors 135 and 154 were not victims

---

[3] The Attorney General argues that the defendant's claim regarding the impartiality of Juror 135 is barred by Rule 5A:18 because he did not make the same argument at trial as on appeal. We assume without deciding that the defendant preserved his challenge to Juror 135.

[4] The defendant argues for the first time on appeal that the trial court erred in mentioning the distance between Virginia and North Carolina when denying the motion to strike Juror 154. Because defense counsel did not make the same, specific objection at trial, Rule 5A:18 bars our consideration of the point on appeal. Moreover, the record does not show that the distance between the two states was a significant factor in the trial court's ruling.

[5] The defendant used two of his peremptory strikes to remove the jurors from the panel.

of sexual abuse.  Defense counsel did not ask the jurors whether the experiences of their family members would affect their ability to be fair and impartial in the case.  Rather, counsel asked them only if hearing the trial testimony about the sexual abuse of the victim would cause them to relive the events described by their family members, and neither juror expressly said that it would do so.  Nothing in the jurors' responses indicated that they would be unable to hear the case impartially or that they would have a bias toward one side or the other.  See Lovos-Rivas, 58 Va. App. at 62-63 ("[W]e certainly cannot conclude from this brief and isolated portion of *voir dire* that *any* of these prospective jurors actually held a 'preconceived view that is inconsistent with an ability to give [appellant] a fair and impartial trial' in this case." (quoting Sizemore v. Commonwealth, 11 Va. App. 208, 211 (1990))).  It is the defendant's burden to show that the juror challenged cannot be impartial.  That was not done for either challenge.

Accordingly, the trial court did not abuse its discretion in denying the motion to strike Jurors 135 and 154.  See Hopson v. Commonwealth, 52 Va. App. 144, 151 (2008) (stating that an appellate court gives deference to a trial court in matters of jury selection because "a trial judge who personally observes a juror, including the juror's tenor, tone, and general demeanor, is in a better position than an appellate court to determine whether a particular juror should be stricken" (quoting Teleguz v. Commonwealth, 273 Va. 458, 475 (2007))).

Dr. Dennis Carpenter, a psychologist who specialized in cases involving abnormal sexual behavior, examined the defendant at the request of defense counsel.  Carpenter concluded from the defendant's responses to a battery of psychosexual tests that the defendant did not show "any paraphilic tendencies" and did not fit the profile of individuals who engaged in "abhorrent sexual behavior."  When the defendant attempted to present Carpenter's testimony in the guilt phase of the trial, the Commonwealth objected that the evidence was not relevant and would infringe upon the ultimate issue in the case.  The trial court sustained the objection.

Whether expert testimony is admissible is left to the discretion of the trial court, and the court's decision will not be reversed on appeal unless the court abused its discretion under the particular facts of the case. See Kilby v. Commonwealth, 52 Va. App. 397, 410 (2008). The defendant argues that the trial court erred in not permitting Carpenter's testimony because the evidence was relevant and he had a constitutional right to present evidence favorable to his defense.

"[E]vidence has relevance if it tends to establish the probability or improbability of a fact in issue." Thomas v. Commonwealth, 44 Va. App. 741, 754-55, adopted upon reh'g en banc, 45 Va. App. 811 (2005); see Va. R. Evid. 2:402(a) (defining "relevant evidence" as "evidence having any tendency to make the existence of any fact in issue more probable or less probable than it would be without the evidence"). The defendant contends that the proffered evidence would tend to establish the improbability that he sexually abused the victim but would leave to the jury's determination whether, in fact, he committed the abuse. See Zook v. Commonwealth, 31 Va. App. 560, 567 (2000) (where the police officer investigating a car accident testified about the relationship between a crack in the car's windshield and the injury to the defendant's head, but did not testify that the defendant was driving the car, his testimony "merely presented evidence that allowed the jury to draw [the] inference" that the defendant was the driver).

The trial court determined that evidence regarding the defendant's sexual preferences was not relevant because "there are people that are sexual deviants that don't engage in criminal conduct, and there are people that are not sexual deviants that do." Evidence that the defendant did not exhibit "paraphilic tendencies" was not relevant to show that he lacked the requisite state of mind to commit the offenses[6] because evidence of a defendant's mental state is irrelevant to

---

[6] As applicable to this case, aggravated sexual battery requires proof that the perpetrator "sexually abuse[d]" a child less than thirteen years of age, Code § 18.2-67.3(A)(1), and "sexual abuse" is defined as "an act committed with the intent to sexually molest, arouse, or gratify any

the issue of guilt unless an insanity defense is raised or such evidence is permitted by statute. See Stamper v. Commonwealth, 228 Va. 707, 717 (1985) (holding that psychiatric testimony that the defendant was a manic-depressive was not admissible as proof that he had been incapable of forming the intent to distribute marijuana); Johnson v. Commonwealth, 70 Va. App. 45, 53 (2019) (holding that where the defendant was charged with eluding the police in violation of Code 46.2-817, the proffered testimony of the defendant's expert witness, that the defendant's post-traumatic stress disorder caused her to believe that someone other than a law enforcement officer was pursuing her on the highway, was not admissible); Peeples v. Commonwealth, 30 Va. App. 626, 633-34 (1999) (*en banc*) (holding that the testimony of the defendant's expert that the defendant suffered a mental disability was not admissible to establish that the defendant had acted in the heat of passion and without malice in shooting the victim).

Additionally, Carpenter's testimony was not admissible because it concerned the ultimate issue in this case—whether the defendant committed the charged offenses against the victim. "[A]n expert witness 'cannot give his opinion upon the precise or ultimate fact in issue'" because "testifying as to the ultimate fact in issue 'invades the function of the fact finder.'" Midgette v. Commonwealth, 69 Va. App. 362, 376 (2018) (quoting Llamera v. Commonwealth, 243 Va. 262, 264-65 (1992)); see Va. R. Evid. 2:704(b) ("In criminal proceedings, opinion testimony on the ultimate issues of fact is not admissible.").

During the sentencing phase, the expert testified fully about the tests and what they revealed. "[T]hese are screening instruments that help gauge whether or not a person is engaged and to what extent if they engage in abhorrent sexual behavior, and to look at helping to assess whether or not a person is likely to commit a new sexual offense." Offered during the guilt

person," Code § 18.2-67.10(6). Taking indecent liberties with a minor in a custodial relationship requires that the perpetrator commit the offense with "lascivious intent, knowingly and intentionally." Code § 18.2-370.1(A).

phase, the evidence bore directly on whether the defendant committed the acts charged; it bore directly on the ultimate fact in issue.

Evidence that the defendant did not have any tendencies toward sexual deviancy, such as "engag[ing] in intense sexualizing fantasies, urges and or behaviors" with children under thirteen years old, would have invaded the province of the jury in determining the defendant's guilt or innocence.[7] Carpenter's proffered testimony suggested that the defendant must be innocent of the charges because he did not fit the profile of a person who "engage[d] in abhorrent sexual behavior."[8] See State v. Walker, 433 P.3d 202, 214-15 (Mont. 2018) (holding that the trial court did not err in excluding evidence that the defendant did not fit a pedophile profile, and noting that "other jurisdictions almost universally reject the introduction of expert testimony regarding whether a defendant fits a sexual offender profile"), reh'g denied (Jan. 29, 2019).

Because Carpenter's proffered testimony was an opinion on the ultimate issue in the case, the trial court did not abuse its discretion in excluding the challenged evidence. See Payne v. Commonwealth, 292 Va. 855, 866 (2016) (finding that a statement made by a police detective that she "believed Payne when he denied participating in the robbery [was] an opinion on the ultimate issue of fact, i.e., whether he was guilty or not"); Justiss v. Commonwealth, 61 Va. App. 261, 274-75 (2012) (holding that an expert's testimony that a BB gun was "likely to cause death or great bodily injury" was an impermissible opinion on the ultimate issue of whether the gun

---

[7] Contrary to the defendant's argument, the fact that such evidence is admissible in sentencing proceedings or in civil adjudications of sexually violent predators does not mean the evidence also is admissible in the guilt phase of a criminal trial.

[8] Some jurisdictions permit a defendant to present evidence that he does not fit a sex offender profile under evidentiary rules allowing character trait evidence. See People v. Stoll, 783 P.2d 698 (Cal. 1989); State v. Gallegos, 220 P.3d 135 (Utah 2009); State v. Davis, 645 N.W.2d 913 (Wis. 2002). The defendant did not argue at trial that the expert's testimony was admissible as character evidence, see Va. R. Evid. 2:404(a)(1), nor does he espouse that position on appeal.

was a deadly weapon); <u>Zelenak v. Commonwealth</u>, 25 Va. App. 295, 300 (1997) (*en banc*) (holding that where the defendant asserted that she had acted under duress in participating in an attempted robbery, the trial court properly refused to permit expert testimony that the defendant had a "disorder that made her 'susceptible to duress'" because such "testimony expresses an opinion on the precise and ultimate issue in this case").

In sum, we find that the trial court did not err in not striking Jurors 135 and 154 for cause nor did it err in excluding the testimony of the defendant's expert witness. We affirm the defendant's convictions.

<u>Affirmed.</u>