COURT OF APPEALS OF VIRGINIA

Present:    Judges Ortiz, Raphael and Lorish
Argued at Fairfax, Virginia


GARY BUTLER MURRAY, JR.

v.        Record No. 1943-24-4

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE LISA M. LORISH
FEBRUARY 24, 2026

FROM THE CIRCUIT COURT OF ARLINGTON COUNTY
Judith L. Wheat, Judge

Lauren E. Brice, Assistant Public Defender (Virginia Indigent
Defense Commission, on briefs), for appellant.

Shelly R. James, Senior Assistant Attorney General (Jason S.
Miyares,[1] Attorney General, on brief), for appellee.


Gary Butler Murray, Jr., challenges his convictions for strangulation and assault and battery on a family or household member. Murray argues that the trial court erred when it denied his motion *in limine*, which sought to preclude the Commonwealth from referring to the complaining witness as a "victim." We agree that—in cases in which it is contested whether any crime took place—referring to a witness as a victim could undermine a defendant's presumption of innocence. But a circuit court has discretion to weigh every case's unique circumstances. Even assuming without deciding that the trial court erred in denying the motion here, context shows that any error from two witnesses using the word "victim" at Murray's trial was harmless. There was also evidence to support the trial court's decision to instruct the jury on Murray's flight from the crime scene. Accordingly, we affirm his convictions.

---

[1] Jay C. Jones succeeded Jason S. Miyares as Attorney General on January 17, 2026.

BACKGROUND

Gary Butler Murray, Jr., lived with his girlfriend, Radiah Johnson, their two daughters, and T.J., Johnson's 14-year-old daughter from a prior relationship. Murray and Johnson got into an argument and, in an attempt at de-escalation, Johnson left the apartment. She received numerous phone calls, first from Murray's phone and then T.J.'s phone. Johnson ignored the calls from T.J. because she believed Murray was trying to call her from T.J.'s phone.

Johnson returned to the apartment complex about 15-30 minutes after leaving and saw Murray pulling away from the complex in his car. Johnson then entered the apartment and found T.J. crying on the floor in her room. According to T.J., she was lying on her bed when Murray entered her room and asked her to call her mother. T.J. called Johnson three or four times, but Johnson never answered. When Johnson did not answer, Murray "got mad" and "tried snatching" the phone from T.J. T.J. did not want to give him the phone, so she resisted when he reached for it. At this point, Murray removed his two daughters (T.J.'s half-siblings) from the room. Murray then pushed T.J. to the ground and got on top of her. He put his shin bone onto her neck, obstructing her breathing. During the struggle, one of T.J.'s acrylic fingernails broke.

Johnson called 911 and reported what T.J. told her. While she was still on the phone with 911, Murray returned to the apartment.

Police arrived at the scene. Among them was Corporal Tyler Keating of the Arlington County Police Department. While other officers were speaking to T.J. and her mother at the scene, Keating saw Murray walk in front of his police cruiser. He recognized Murray from prior interactions. Keating called out to Murray in a "friendly tone," but Murray "immediately took off" away from the police cruiser, running "[a]ggressively . . . with all he had." Later, Murray called Johnson, in a call that was recorded, and asked her to meet with him. Murray also expressed concern that the police might follow her to their meeting spot.

The Commonwealth charged Murray with strangulation in violation of Code § 18.2-51.6 and assault and battery of a family or household member, in violation of Code § 18.2-57.2. Before trial, the defense moved *in limine* requesting that "the Commonwealth not be permitted to refer to [T.J.] as a victim" because the term "is a legal conclusion" and Murray is entitled to the presumption of innocence. The Commonwealth objected, noting that it did not believe "there's any authority for the court to limit the Commonwealth referring to someone we believe is a victim as a victim." The Commonwealth nonetheless agreed that it would try to avoid saying the word in opening but reserved the right to use it in closing and said, "I would not want somebody accidentally referring to that to be the cause of a mistrial." The court denied the motion but asked the Commonwealth "to try to avoid using the term victim in opening statement." The court also emphasized that the jury would "receive instructions of law, including a presumption of innocence" and both sides could make their arguments as to Murray's guilt.

At trial, the Commonwealth's witnesses testified as outlined above, though two witnesses used the word "victim," once each. First, Keating mentioned that "fellow officers were talking to the victims at the actual scene" when he saw Murray. Then, Astrid Strangio, in describing her job as a forensic nurse examiner, explained that she is "a registered nurse who has specialized training to care for victims of violent crimes such as sexual assault and domestic violence."[2] Murray did not object when either witness used the word "victim." The Commonwealth did not make any references to T.J. as a victim at any time during trial.

For the defense, Murray's friend, Edward Adams, testified that he was at Murray's home while the altercation between Murray and T.J. occurred and that he did not hear any commotion indicating a physical fight. But he did see Murray with two phones when he left T.J.'s bedroom,

---

[2] Strangio conducted a forensic exam on T.J. at the hospital. She testified that she "noticed red irregular interrupted bruising" on T.J.'s neck, clavicle, and chest as well as petechia (pinpoint bruising) on the hard palate at the back of her throat.

despite only having one phone when he went in. In rebuttal, the Commonwealth called Johnson to the stand. She testified that she did not believe Adams was at the apartment that day because T.J. never heard him in the apartment, and she did not see him there and was only away from the apartment for such a short time.

The jury convicted Murray on both counts, and the trial court sentenced him to 4 years of incarceration with 3 years suspended on the strangulation charge and 12 months of active jail time for the assault and battery of a family member. Murray appeals.

ANALYSIS

Murray raises two challenges. First, he contends that the trial court erred in denying his motion *in limine* to prevent the Commonwealth from referring to the complainant in the case as a "victim." Second, Murray argues that the trial court erred in granting the Commonwealth's requested jury instruction on flight.

A. While using the word "victim" may undermine a defendant's presumption of innocence, a trial court may consider the circumstances of each case in deciding whether to allow it.

Murray's defense to the charges against him was that T.J. was never strangled or assaulted; thus, T.J. was not a "victim." Murray moved the trial court, *in limine*, to prevent the Commonwealth from referring to T.J. as a "victim" during the trial, arguing that labeling her as a "victim" removed the presumption of innocence that he is afforded under the Due Process Clause of the United States Constitution. The court denied the motion.

To start, we consider the Commonwealth's argument that Murray failed to preserve this argument for appeal by raising it only through a motion *in limine* rather than contemporaneously objecting when the two Commonwealth's witnesses used the word "victim." Rule 5A:18 provides that "[n]o ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "The purpose of Rule 5A:18 is to

- 4 -

allow the trial court to correct in the trial court any error that is called to its attention." *Cirrito v. Cirrito*, 44 Va. App. 287, 314 (2004).

Motions *in limine* "serve worthwhile functions of narrowing issues, preventing trial delay, avoiding expense, and promoting judicial efficiency." *Harward v. Commonwealth*, 5 Va. App. 468, 474 (1988). There is no question that Murray's motion gave the trial court an opportunity to consider Murray's argument and, in turn, to reject it. "No party, after having made an objection or motion known to the court, shall be required to . . . make such objection or motion again in order to preserve his right to appeal, challenge, or move for reconsideration of, a ruling, order, or action of the court." Code § 8.01-384; *see Harward*, 5 Va. App. at 474 (noting that a ruling on a motion *in limine* can "dispense[] with the necessity of a contemporaneous objection").[3] In short, Murray properly preserved for our review whether the court erred in denying his motion *in limine*.[4]

Murray claims that the trial court's ruling violated his due process rights and constitutional presumption of innocence. "Generally, we review a trial court's decision to admit or exclude evidence using an abuse of discretion standard and, on appeal, will not disturb a trial court's decision to admit evidence absent a finding of abuse of that discretion." *Avent v. Commonwealth*, 279 Va. 175, 197 (2010). But we review the interpretation of legal principles de novo. *Leonard v. Commonwealth*, 39 Va. App. 134, 148 (2002). A court "by definition abuses its discretion when it makes an error of law." *Johnson v. Commonwealth*, 70 Va. App. 45, 49 (2019) (quoting *Porter v. Commonwealth*, 276 Va. 203, 260 (2008)).

---

[3] We assume without deciding that moving to prevent "the Commonwealth" from using the word "victim" extended to the use of the word "victim" by the Commonwealth's witnesses.

[4] While a motion *in limine* is sufficient to preserve a blanket objection to the use of the word "victim," given the importance of context, a trial judge cannot evaluate whether a particular utterance of the word "victim" was prejudicial and craft an appropriate remedy without a contemporaneous objection.

Our Supreme Court has explained that it is improper for a prosecutor to express a personal belief or opinion "as to the guilt of an accused," *Smith v. Commonwealth*, 207 Va. 459, 467 (1966), or as to the "credibility of a witness and the weight of the evidence[,]" *Jones v. Commonwealth*, 218 Va. 732, 737 (1978). But whether use of the word "victim" by a prosecutor or witness amounts to an improper opinion or otherwise violates the presumption of innocence afforded to criminal defendants is an issue of first impression in Virginia's appellate courts. The phrase "presumption of innocence" is not found in the United States Constitution. Yet it is "a basic component of a fair trial under our system of criminal justice." *Estelle v. Williams*, 425 U.S. 501, 503 (1976). It is so fundamental that the failure to give a requested instruction on the presumption of innocence is reversible error. *Whaley v. Commonwealth*, 214 Va. 353, 355 (1973). To "effectuat[e]" the "presumption [of innocence], a criminal defendant is entitled to be clothed with indicia of innocence until . . . guilt is established by the trier of fact from the evidence presented at trial." *Bruce v. Commonwealth*, 9 Va. App. 298, 301 (1990) (second and third alterations in original) (quoting *Vescuso v. Commonwealth*, 4 Va. App. 32, 40 (1987)).

Many other states have considered the question now before us. For example, the Supreme Court of Oregon has persuasively observed that "where a defendant denies that any crime occurred, references to the complaining witness as a 'victim' may undermine the presumption of defendant's innocence because it assumes defendant's guilt, a fact that is necessarily not proved until the jury finds the defendant guilty." *State v. Sperou*, 442 P.3d 581, 590 (Or. 2019). And other courts have agreed, concluding that labeling a witness as a "victim" could violate evidence rules or raise constitutional issues. For example, one court found that a prosecutor's repeated reference to the "victim" improperly bolstered the evidence and was comparable to "an opinion on the ultimate issue of the case." *State v. Albino*, 24 A.3d 602, 617 (Conn. App. Ct. 2011); *see also, e.g.*, *Jackson v. State*, 600 A.2d 21, 24 (Del. 1991) ("We agree

with defendant that the word 'victim' should not be used in a case where the commission of a crime is in dispute."); *State v. Mundon*, 292 P.3d 205, 230 (Haw. 2012) ("[U]nless there are good reasons found by the court for permitting otherwise, the court should instruct all counsel that they and their witnesses must refrain from using the term [victim]."); *State v. Radue*, 564 P.3d 1230, 1254 (Idaho 2025) ("[I]ndiscriminate use of the word 'victim,' instead of a neutral term like 'alleged victim,'" is "not favored."); *Veteto v. State*, 8 S.W.3d 805, 816 (Tex. Crim. App. 2000) ("Referring to [the child] as the victim instead of the alleged victim lends credence to her testimony that the assaults occurred and that she was, indeed, a victim.").

At the same time, other courts have concluded that there is no inherent problem with the word "victim," which "*can* be vouching or subversive of the presumption of innocence," but that "the manner, context, and frequency in which the term is used [is what] transforms its meaning and connotations." *United States v. Moffit*, 588 F.Supp.3d 1106, 1116 (D. Idaho 2022). Courts, therefore, have also found that references to a complaining witness as "victim" did not violate a defendant's constitutional rights. *Id.* at 1116 n.3 (collecting cases); *see also Sperou,* 442 P.3d at 592 ("One can imagine situations where such use [of the word victim] is meant to convey, improperly, a prosecutor's personal opinion that a witness is credible," but "one can readily imagine other situations in which the use of that term is a fair comment on the evidence (e.g., 'we will prove that defendant committed this crime and that [witness] was his victim').").

We agree that in a case in which it is unclear whether there is any victim in the first place, referring to a complaining witness as a "victim" may undermine a defendant's presumption of innocence and may influence the jury. Ultimately, the propriety of using the term "victim" "will depend on the context in which the word is used." *Sperou*, 442 P.3d at 592; *see also Moffit*, 588 F.Supp.3d at 1116 (noting the importance of "the manner, context, and frequency in which the term is used"). A circuit court must consider the unique circumstances of each case, including

whether the word is used or planned to be used by the prosecutor, the Commonwealth's witnesses, defense counsel, or as part of the jury instructions. Thus, there is no per se rule forbidding use of the word "victim." Rather, it is a rule of reason. *Sperou*, 442 P.3d at 592.

Finally, we note that any infringement on the presumption of innocence is subject to harmless error review. *See Commonwealth v. Swann*, 290 Va. 194, 200 (2015) ("Code § 8.01-678 makes 'harmless-error review required in all cases.'" (quoting *Ferguson v. Commonwealth*, 240 Va. ix, ix (1990))).[5] For errors impacting a criminal defendant's constitutional rights, "the harmless-error standard . . . ask[s] 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction[.]'" *Commonwealth v. White*, 293 Va. 411, 420-21 (2017) (quoting *Chapman v. California*, 386 U.S. 18, 23 (1967)). We do not "presume that an error cannot be harmless if the factfinder considered erroneously admitted evidence." *Id.* at 421. Rather, we must determine whether it is "clear beyond a reasonable doubt that a rational [factfinder] would have found the defendant guilty absent the error." *Id.* at 422 (alteration in original) (quoting *Neder v. United States*, 527 U.S. 1, 18 (1999)). Factors in making this evaluation include "the importance of the tainted evidence in the prosecution's case, whether that evidence was cumulative, the presence or absence of evidence corroborating or contradicting the tainted evidence on material points, and the overall strength of the prosecution's case." *Lilly v. Commonwealth*, 258 Va. 548, 551 (1999).

Even assuming without deciding that the trial court erred in denying Murray's blanket motion *in limine* to prevent the Commonwealth from making any reference to the "victim," any

---

[5] Other jurisdictions have also applied harmless error in these circumstances. *See, e.g.*, *State v. Devey*, 138 P.3d 90, 96 (Utah Ct. App. 2006) (concluding, after assuming without deciding that the term "victim" was unconstitutional, that the error was harmless because there was only "one isolated reference to the child as 'the victim,' and the reference was made, without prompting, by a witness"); *State v. Wigg*, 889 A.2d 233, 237 (Vt. 2005) ("conclud[ing] beyond a reasonable doubt that the jury would not have returned a different verdict had the detective used different and more neutral terminology").

error was harmless here. *McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018) (explaining that we may assume without deciding an issue can be reviewed if it permits us "to resolve the appeal on the best and narrowest grounds"). In evaluating whether the use of "victim" may have contributed to Murray's convictions we consider the specific context of how the word was used. Here, the two references were made by witnesses for the Commonwealth, not by the prosecution[6] or the trial judge. Keating used the word "victim" in the context of stating that some of his "fellow officers were talking to the victims at the actual scene." While Keating was no doubt referring to T.J. and her mother with this comment, "the context of the detective's testimony indicates that he was using a term he viewed as synonymous with complainant" and he "never expressed an opinion that [the complaining witness] was victimized or that [the] defendant was guilty." *State v. Wigg*, 889 A.2d 233, 237 (Vt. 2005). Then, in generally describing her job as a forensic nurse examiner, Strangio explained that she is "a registered nurse who has specialized training to care for victims of violent crimes such as sexual assault and domestic violence." As counsel for Murray conceded at oral argument, this statement was "not a specific reference to the complaining witness." We are confident that the way "victim" was used in these two instances did not contribute to Murray's conviction, which was otherwise strongly supported by the testimony of T.J. and her mother and corroborated by Strangio's observations about T.J.'s physical injuries. Thus, any error here was harmless.

B. There was evidence to support the trial court's decision to instruct the jury on flight.

The trial court instructed the jury using the model jury instruction on flight. There is no question "that evidence of a criminal defendant's flight to avoid prosecution is a circumstance

---

[6] The Commonwealth also used the word "victim" in closing argument when referring to the agreed-upon jury instruction regarding bodily injury that stated, "the victim need not experience any observable wounds." Murray has not raised any objection to this jury instruction on appeal.

that a jury may consider." *Turman v. Commonwealth*, 276 Va. 558, 564 (2008). In fact, "[i]t is well-established that '[f]light following the commission of a crime is evidence of guilt, and the jury may be so instructed.'" *Cheripka v. Commonwealth*, 78 Va. App. 480, 503 (2023) (second alteration in original) (quoting *Ricks v. Commonwealth*, 39 Va. App. 330, 335 (2002)). Murray argues, however, that no evidence supported this instruction, and so the trial court erred in giving it.

In reviewing jury instructions, we must "see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises." *Harris v. Commonwealth*, 83 Va. App. 571, 589-90 (2025) (quoting *Conley v. Commonwealth*, 74 Va. App. 658, 674-75 (2022)). The trial court has "broad discretion in giving or denying instructions requested," and we review those decisions for an abuse of discretion. *Gaines v. Commonwealth*, 39 Va. App. 562, 568 (2003) (en banc). "[J]ury instructions are proper only if supported by the evidence, and more than a scintilla of evidence is required." *Payne v. Commonwealth*, 292 Va. 855, 869 (2016).

We find that there was evidence to support the flight instruction. For flight to establish consciousness of guilt, "the evidence must demonstrate a 'nexus' between the flight and the alleged offense." *Cheripka*, 78 Va. App. at 503. "The nearer . . . to the commission of the crime committed, the more cogent would be the circumstance that the suspected person attempted to escape, or to evade prosecution, but it should be cautiously considered, because it may be attributable to a number of other reasons, than consciousness of guilt." *Anderson v. Commonwealth*, 100 Va. 860, 863 (1902). "Multiple potential causes for a defendant's flight, including other offenses unrelated to the charged offense, do not undermine the nexus of the flight to the charged offense." *Cheripka*, 78 Va. App. at 503. "Instead, such circumstances are properly submitted to and weighed by the jury." *Id.*

- 10 -

The evidence supports that Murray fled the apartment while Johnson called 911. While he argues that he left because Johnson shouted at him to "get away from" T.J., other circumstances support an inference that it was his awareness of his criminal guilt that prompted him to leave the scene. After Murray was outside and far from T.J., he came across Keating. Murray then ran away from Keating after Keating called out to him in a "friendly tone." Murray argues that, as a Black man, his flight was motivated by a general desire to avoid interactions with the police. But crediting that desire would still leave unexplained Murray's choice to sprint away "with all he had." What is more, when Murray called Johnson later that day and said he wanted to meet up with her to talk about what happened, he expressed concern that the police might follow her to their meetup. This statement is further evidence that Murray wished to evade arrest or interrogation involving the alleged assault.

Accordingly, the record here is "replete with evidence from which such an inference of guilt may be drawn from flight." *Thomas v. Commonwealth*, 279 Va. 131, 168 (2010). Because more than a scintilla of the evidence presented at trial supported the jury instruction on flight, we affirm the trial court's decision to give the instruction.

CONCLUSION

For these reasons, the trial court's judgment is affirmed.

*Affirmed*.